**UNITED STATES of America ex rel. Francisco GAINER, Petitioner,**

v.

**STATE OF NEW JERSEY, Respondent.**

**Civ. No. 550-67.**

United States District Court
D. New Jersey.

Dec. 15, 1967.

Francisco Gainer, pro se.

Michael R. Imbriani, Prosecutor, Somerset County, N. J., by Raymond A. Trombadore, Asst. Pros., for respondent.

## MEMORANDUM and ORDER

SHAW, District Judge.

Petitioner seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c) (3). He was convicted after trial on the verdict of a jury in the Somerset County Court of conspiracy to commit robbery and of armed robbery. He had also been indicted for atrocious assault and battery with respect to which the jury returned a verdict of not guilty. He was sentenced to serve a term of not less than 4 nor more than 6 years imprisonment. He appealed to the Superior Court of New Jersey, Appellate Division, where his conviction was affirmed by a 2 to 1 vote. State v. Gainer, 93 N.J.Super. 258, 225 A.2d 608 (1966). On appeal to the Supreme Court of New Jersey the convictions were affirmed "substantially for the reasons expressed in the majority opinion of the Appellate Division." State v. Gainer, 48 N.J. 376, 225 A.2d 578 (1967). Petitioner has exhausted his State remedies.

He filed his petition in this Court for a writ of habeas corpus while serving the sentence imposed by the Somerset County Court. Shortly thereafter he was released on parole. The fact that he has been released on parole does not deprive this Court of jurisdiction. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Petitioner is presently in the custody of the New Jersey Board of Parole and he has standing to prosecute his petition for a writ of habeas corpus. The New Jersey Board of Parole is an agency of the New Jersey state government and, since the State of New Jersey is the real party in interest and named as respondent in the petition, it would serve no useful purpose to require the mere formality of amending the petition to make the Board of Parole a party. The interest of the State has been represented by the Prosecutor of Somerset County who raised no objection to the continuance of the proceedings initiated in this Court on the ground that the Board of Parole is not a party.

It is petitioner's contention that an involuntary incriminating statement allegedly made by him to a police officer was erroneously admitted into evidence in violation of his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution. Petitioner raised this question on his State court appeals.

When the unsigned statement was offered in evidence defense counsel made no objection and the statement was read to the jury. Petitioner took the stand and testified in his own behalf, denying his guilt and stating that the incriminating statement had been procured after lengthy interrogation, harassment, and physical abuse which began at the time that he was arrested. Petitioner stated in his direct examination at trial:

Q. And at police headquarters, were you questioned?

A. Yes, I was.

Q. Were you mistreated at that time?

A. That is right.

Q. What happened there?

A. When I got there, it was about three o'clock in the morning, three, 3:30, something like that. They set me down in a wooden chair. I was getting kind of sleepy. I went to nod off and state trooper come up there and kick me on the thighs. Get up, this ain't the Waldorf. We don't sleep here. I straightened up. He walked off. I complained

about the fan. It was a little cool. They had a fan directly in front of me. The fan was making me feel very chilly. I only had a shirt. He said, "You don't get no accommodations here. You just sit there and be quiet. I don't want to hear you breathe." I said, "Okay." That morning, when they took me downstairs in the basement about eight o'clock, asked me did I know anything about this robbery. I told him, "Look, I have a little fall out with my girl friend. I took a ride out here. I felt sleepy, so I decided to park my car."

Q. Why did you tell the troopers this?

A. Well, I felt then that I wasn't going to tell them nothing because of the beatings they gave me. I was still mad about it. It wasn't nothing I could do. I figured out, I will tell them anything to get off my back, you might say. They started cursing me. I told them, "Look, I don't know nothing." They asked me about the tire. I said, "Look, I had a flat tire. I just put the tire in the back there." In other words, I was telling them a big lie. Of course, they knew this. There was a fellow in plainclothes, heavy set, about forty, forty-one, something like that, who was doing the questioning to me down in the basement at this time. He got right up in my face, started to shouting, "You know, man, if you was a man, you would tell us all about this thing. We wouldn't have to take you through all this punishment." I told them, "Look, I don't know nothing." He says, "I am going to ask you just one more time. I want you to tell me the truth. Did you go in that gas station?" I says, "No, I didn't." He balled his fist up and hit me. I fell on the couch. All right, we are going to try it again. I am going to ask you the same question. I want an answer. I said, "Mister, you can hit the other side, too, if you want to. I didn't go in that gas station. I don't know nothing what happened in that station. I have nothing to do with it. I don't know nothing." So, this guy, he knocked me down again, went on about his business. I guess, he seen I wasn't going to do no talking. So, another fellow come in and was questioning me and said, "Look, this can keep up all day, if you want it to." As a matter of fact, at the time, had been something like close to ten or twelve hours—they were taking me through proceedings of wanting to say something of what happened. I told them I would like to have a lawyer, or something like that. They say, "You don't get nothing until you tell us what happened." So, I figured I might as well make up some line to tell them. This was being whipped. It makes better sense to tell them anything. This is what I thought to myself. So, I did. I told them part of what happened and exaggerated and hoped that they believed what I told them.

Defense counsel made no request for a preliminary determination by the trial judge as to the voluntary nature of the incriminating statement. Neither did he request that the jury be charged that it should disregard the statement if they found it to have been involuntarily made. The trial judge did not so charge and no exception to the charge was taken. The majority opinion of the Superior Court, Appellate Division, concluded that there was no prejudicial error in the admission of petitioner's statement in evidence without a preliminary determination by the trial court as to the voluntary nature of it and without a charge by the court that the jury was to disregard the statement unless it found that it had been made voluntarily. The reasoning was to the effect that "there was no fundamental difference between defendant's

testimony on the witness stand and the version of events set forth in the statement admitted into evidence." The dissenting judge disagreed stating:

> The majority opinion concludes that defendant was not prejudiced by the trial court's failure to follow the rule respecting the admissibility of confessions because
>
>> "there was no fundamental difference between defendant's testimony on the witness stand and the version of events set forth in the statement admitted into evidence. There are some differences and inconsistencies in the two stories. Details and sequences of events vary. However, basically the two stories, while not identical, are similar."
>
> I cannot agree. In my opinion, the record does not support that conclusion. If defendant's trial testimony is true, he was innocently inveigled into coming from New York City to New Jersey with two other men, with no prior knowledge of their intention to hold up a gas station; when he learned of their intentions he tried to discourage them and then refused to participate, remaining in his auto some distance from the scene. If the confession is true, then defendant was an active participant in the robbery from the first conversations in New York in which it was agreed, to quote the confession, that,
>
>> "My job was to take a rope and put it over the gas station attendant's head and pull it up around his neck to show him we meant business."
>
> I would reverse.

A careful examination of the transcript of the proceedings at trial leads this Court to reach the same conclusions as those expressed in the above mentioned dissenting opinion.

Except for the testimony of an admitted accomplice who had entered a plea of guilty, the principal piece of evidence in the State's case implicating petitioner was his unsigned statement. The procedure followed at trial could be justified only on the basis of a waiver by petitioner of the right to have a preliminary finding by the trial court as to the voluntary nature of the incriminating statement *and* of the right, if the trial court found the statement voluntary, to have the issue of voluntariness submitted to the jury under appropriate instructions as to the law. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

When petitioner took the stand, despite a prior conviction, and testified in his own behalf that the unsigned statement was not his voluntary statement, he then placed in issue the matter of the voluntary nature of it and dispelled any rational contention that he knowingly and intelligently waived his constitutional rights as outlined in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

At this point in the trial the trial judge was alerted to the fact that petitioner did not concede that his statement to the police was a voluntary statement. There was an affirmative repudiation of it. "Certain alerting circumstances * * * which may reveal a dereliction in defense counsel's failure to object to the introduction of a confession—may, under due process standards, require a trial judge to investigate the necessity of conducting a hearing notwithstanding the absence of an objection." United States v. Taylor, 374 F.2d 753, 756 (7th Cir. 1967).

■ The trial judge was justified in assuming *at the time* that the statement of petitioner was offered in evidence that the voluntary nature of it was not questioned. This is particularly so when defense counsel stated affirmatively that there was no objection to the admission of it in evidence. But when petitioner took the stand and by his testimony placed in issue the voluntary nature of the statement, inquiry out of the presence of the jury was indicated to determine whether defense counsel and petitioner were aware of the constitutional right to a preliminary determination by the

trial judge on the voluntary nature of the incriminating statement. Had this been done, it would have settled any question of whether failure of counsel to object was a deliberate strategic tactic.

The truth or falsity of the statement or the *degree* of inconsistency of it with testimony by the petitioner is not material with respect to observance of the procedural safeguards outlined in Jackson v. Denno, supra; Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed. 2d 760 (1961). The relative similarity in substance of petitioner's testimony on the stand as contrasted with what was contained in the statement admitted in evidence would, in conjunction with consideration of other facts and circumstances, be material only in reaching a factual finding of the voluntary or involuntary character of the statement.

■ When petitioner took the stand and repudiated the statement alleged to have been made to the police as involuntary, opportunity, if desired by petitioner, should have been afforded for a full hearing [1] on the issue so that the trial judge could make a preliminary finding as to whether or not the unsigned statement was voluntarily made. If found to have been involuntary, the statement should have been stricken. If found to have been voluntary by the trial judge, petitioner would then be entitled to a further independent determination of the issue of voluntariness by the jury. This procedure is not only in accord with the requirements of Jackson v. Denno, supra, but also consistent with State practice as recognized in State v. Smith, 32 N.J. 501, 161 A.2d 520 (1960); State v. Wolf, 44 N.J. 176, 207 A.2d 670 (1955). See United States v. Inman, 352 F.2d 954 (4th Cir. 1965) (involving failure of a trial judge to submit the issue of voluntariness to the jury).

■ The question of a prejudicial deprivation of a federally secured constitutional right cannot be put to rest merely on the basis of failure of defense counsel to take such action as would have assured observance of such right. When it appears clearly during the course of trial, as is the situation in this case on the record, that there is doubt as to whether defense counsel may be aware of a fundamental constitutional right of his client, inquiry out of the presence of the jury is indicated to make certain whether or not there is knowledge of the right and an intelligent waiver thereof by the defendant. There is no doubt that if counsel had objected to the admission of the statement in evidence, the trial judge would have been obligated to make a preliminary finding as to the voluntary nature of it. Further, if found to be voluntary, petitioner would have been entitled to have the issue submitted to the jury with instructions that the statement was to be disregarded if the jury found that it had been involuntarily made. If the trial judge refused to observe these procedural safeguards, there would have been no question but that petitioner would have been entitled to have the judgments of conviction vacated. Similarity of the factual content of the statement allegedly given to the police with petitioner's testimony on the stand would not have been a tenable ground upon which the trial judge could have denied the procedural safeguards relating to the admission into evidence of confessions. In essence the judgments of conviction are upheld by the State solely on the grounds that defense counsel made no objection to the admission of the statement in evidence, presented no request to charge, and took no exception to the charge. This course of action by defense counsel was considered as deliberate strategy.

■ The deliberate strategy has been assumed. The assumption is not warranted by the facts. The reasonable inference is that counsel was probably not aware of the right to object or of the right to request appropriate instructions

---

[1]. Enabling the prosecution to present any further evidence available to it to refute petitioner's testimony and also to petitioner to present any further corroborating evidence, if any, which might have been available to him.

to the jury. It is only in cases where it appears clearly that there is *deliberate* bypassing of procedural safeguards that a federal court is justified in denying a petition for the writ. This was stated succinctly in Fay v. Noia, 372 U.S. 391, at pages 438–439, 83 S.Ct. 822, at page 848, 9 L.Ed.2d 837 (1963):

> We therefore hold that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies.

> But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to *introduce legal fictions into federal habeas corpus.* The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 82 L.Ed. 1461]—"an intentional relinquishment or abandonment of a known right or privilege"—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can *fairly be described as the deliberate by-passing of state procedures,* then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits * *." (Emphasis supplied)

This Court has given consideration to the question of whether a hearing should be held to determine whether there was an intelligent waiver by petitioner of a known constitutional right, but has concluded on the basis of the record before it that such a hearing would serve no useful purpose at this time. It is clear from the record in the State court that the issue of voluntariness of petitioner's statement was raised by his own repudiation thereof in his sworn testimony. A damaging admission, not found in his testimony, is set forth in that statement.

Without the statement in evidence, the State's evidence from which guilt could reasonably be inferred was meager coming from the lips of a confessed accomplice whose credibility would be the subject of cautious scrutiny as to motive.

For the reasons stated this Court finds that the writ should be issued releasing petitioner from the custody of the Board of Parole, but that the execution thereof should be stayed for a period of 30 days in order to permit the State opportunity to take an appeal. If the decision of this Court becomes final by reason of failure of the State to take an appeal within 30 days of the date hereof, petitioner will be entitled to a new trial and subject to the usual incident of bail pending trial. Further, if the judgment of this Court becomes final and the State fails to move the matter for trial within 90 days thereafter, then petitioner shall not be subject to further prosecution.

Now, therefore, it is on this 15th day of December, 1967, ordered that the application of petitioner for a writ of habeas corpus be and the same is hereby granted, and that execution thereof shall be stayed for a period of 30 days from the date hereof to allow the State opportunity to appeal.

Further ordered that in the event this judgment becomes final by reason of failure of the State to prosecute an appeal within the 30 day period mentioned and the State fails within a period of 90 days thereafter to move the matter for retrial, petitioner shall not be subject to further prosecution on the indictments pursuant to which he was convicted and he shall be released unconditionally from any further custody in connection therewith.

Further ordered that the documents listed below, constituting the record before the Court in this case, shall be marked and described as follows:

Exhibit C–1—Photocopy of Indictment on which petitioner was tried in the Somerset County Court.

Exhibit C–2—Transcript of trial in the Somerset County Court, November 4, 5, 19, 1964.

Exhibit C–3—Copy of judgment of conviction.

Exhibit C–4—Brief of Defendant-Appellant filed in the Superior Court of New Jersey, Appellate Division, Docket No. A–1052–64.

Exhibit C–5—Answering brief and appendix of the State filed in the Superior Court of New Jersey, Appellate Division, Docket No. A–1052–64.

Exhibit C–6—Brief and appendix of Defendant-Appellant filed in the Supreme Court of New Jersey, Docket No. M–228.

Exhibit C–7—Letter from the Office of the Prosecutor of Somerset County dated June 2, 1967.

Exhibit C–8—Letter from the Office of the Prosecutor of Somerset County dated October 2, 1967.

