## R. J. HILL v. THE STATE.

1. CRIMINAL PRACTICE. *Testimony of defendant before committing court. Whether competent on subsequent trial.*
   Where by statute a person accused of a crime is made a competent witness in his own behalf, and one so accused testifies on his preliminary examination before a committing court in exercise of this right, such testimony may afterward, on a trial of his case, be used against him.

2. SAME. *Defendant's testimony. Sufficiency of. Errors, when not available. Supreme court practice. Manslaughter.*
   H., charged with the murder of B., testified in his own behalf as follows: " B. came to my house for a bucket of water, got it, and went out of the ga'e. I called to him and asked him about a threat he had made to beat me. B. answered, ' By God! I will yet if you fool with me.' I told him that he had threatened to kill me. He denied that he had so threatened. I told him I could prove it by E. I told him that I did not like for any man to run over me in any such style as that. He turned round and said, ' By God! if you don't like it, just come out here, and I can satisfy you.' He started toward me, pushing up his sleeves when he saw me come. He turned to get a stick and reached down toward the ground, but did not get it. I got my knife. He put his right hand in his pocket and held it open with his left, and came toward me, and I went toward him with my knife in my hand, and then I cut him, advancing face to face, and cut him one time." B. died from the effects of this cut. H. was convicted of manslaughter. *Held*, that the conviction was proper on this testimony of H. himself; and the judgment cannot be reversed because of the erroneous action of the court in reference to other evidence and the instructions given for the State.

3. SAME. *Dying declaration. Evidence of religious belief of deceased.*
   Where. in the trial of a case of homicide, proof of a statement made by the deceased is admitted in evidence as his dying declaration in relation to the killing, it is error for the court to exclude testimony offered by the defend-

ant, with the view of detracting from the value of such declaration, to the effect that the deceased had, in his lifetime, often said "that there was no hell or hereafter, and all the punishment a man got was in this world."

4. CRIMINAL PRACTICE. *Bail after conviction of felony. Section* 2341, *Code of* 1880, *applied.*

  It is improper to admit to bail (pending an appeal to this court) one convicted of a felony because he has a crop which needs his attention, and the forced neglect of which by his confinement in jail will result in his financial ruin, and because his wife is frail and delicate. Section 2341, Code of 1880, denies bail to a convict of felony, except in the discretion of court or judge, "to be exercised with the greatest caution, and only when the peculiar circumstances of the case render it proper in the opinion of such court or judge."

APPEAL from the Circuit Court of Panola County.

HON. A. T. ROANE, Judge.

R. J. Hill was indicted for the murder of one Henry Brown. Brown was wounded by a stab in the breast on Tuesday, and died from its effects on the next following Monday. On Sunday, the day before his death, a justice of the peace was sent for, and Brown made a statement which was taken down by the justice. This statement was offered by the State as the dying declaration of Brown, and objected to by the defendant. The jury retired, and the State introduced evidence to support the introduction of the statement. Mrs. Brown, the widow of deceased, testified that on Sunday, a short while before the statement was made, her husband said that he was going to die and would not get well. Dr. N. C. Knox testified that he saw deceased while the statement was being made, and that Brown was in a very critical condition, "and I thought that he would live but a short while unless there was a great change." This statement was made about twelve M. on Sunday. The defendant then showed by several witnesses that during the afternoon of that day Brown expressed the hope that he would get well, and by others that he expressed the belief that he would get well. The defendant further showed that deceased had often said "that there was no hell, or hereafter, and all the punishment a man got was in this world." The jury were brought in, and the court admitted the statement as the dying declaration of Brown over objection by the defendant. The State then offered in evidence

the written testimony of the defendant, R. J. Hill, given voluntarily in his own behalf on his preliminary examination before the justice of the peace, he being charged by affidavit with the murder of Brown.    This testimony was admitted over objection by defendant.    It was as follows :  " Mr. Brown came over to my house on Tuesday morning about daylight—came after some water. I asked him how they were getting along working for Major McCullar. He said, ' Pretty well,' and he went out of the gate with a bucket of water.    I asked him about something he said about giving me a good beating.    He said, 'By God! I will yet if you fool with me.'    I told him he had threatened to kill me.    He said he did not say he would kill me. I told him I could prove it. He asked who by.    I said, ' By Jim Ewbanks.'    He then picked up his bucket, and I told him I did not like for any man to run over me in any such style as that.    He turned around to me and said, ' By God ! if you don't like it, just come out here, and I can satisfy you.' He started toward me, pushing up his sleeves when he saw me come.    He turned to get a stick and reached down toward the ground, but did not get it.    I got my knife out.    He put his right hand in his pocket and held it open with his left, and came toward me, and I went toward him with my knife in my hand, and then I cut him, advancing face to face, and cut him one time."    The defendant offered the same evidence in relation to the religious belief of deceased as was shown to the court when it had under consideration the admission of the statement of deceased as a dying declaration.    The court refused to admit this evidence, and the defendant excepted.

The court instructed the jury for the State as follows :

" 1.  The court instructs the jury that no threats, however recently made, or however violent and vindictive, afford any justification or excuse for taking human life.    But for defendant to be excusable or justifiable in killing Brown, the evidence must show that at the time of the killing there was some overt act upon the part of deceased indicating a present design and intention then and there to kill the defendant or to do him some great bodily harm, and there was really or apparently imminent danger; that is, immediate,

pressing, and urgent danger, real or apparent, of such harm being accomplished.  And this danger or necessity to kill must not have been brought upon the defendant by his own willful wrong, fault, or contrivance, and if so brought on then he would not be justifiable even though he was in danger of loss of life or great bodily harm when he killed Brown."

"2. If the jury believe from all the evidence that the defendant killed Brown, and further believe from all the evidence that in the combat which resulted in Brown's death that the defendant was the aggressor, that he provoked, sought, and brought about the difficulty, and then, after provoking and bringing about a difficulty in which he, defendant, was the aggressor and at fault, he stabbed and killed Brown, then in such case the defendant would not be justifiable, even though the jury should believe from the evidence that defendant was really or apparently in imminent danger of great bodily harm at the hands of Brown when defendant cut him, but under this state of facts, if established by the evidence, he would be guilty of manslaughter."

The jury found the defendant guilty of manslaughter, and he was sentenced to two years in the penitentiary.  Thereupon he appealed to this court.

*W. S. Chapman,* for the appellant.

1. The burden of proof rested on the State to show that Brown's declarations were made under a sense of impending death.  Declarations of this character should be admitted with *great* caution. *Brown* v. *The State,* 3 George 442; 1 Greenleaf, § 162; 13 S. & M. 506.

If it appears that he had any hope of living, however slight, the declarations were not competent and were inadmissible.  1 Greenleaf 158; 55 Miss. 430; 9 S. & M. 715; 3 George 433; 1 Cushman 322.

The statement of deceased is incompetent on another ground.  Brown was proven, and it was not attempted even to be controverted, to be an infidel.  He did not believe there was any hell or hereafter, and did not believe in future rewards and punishments.  In 1 Greenleaf, § 157, is to be found this language: "And as an

oath derives the value of its sanction from the religious sense of the party's accountability to his Maker, and the deep impression that he is soon to render to Him the final account, wherever it appears that the declarant was incapable of this religious sense of accountability, whether from infidelity, imbecility of mind, or tender age, the declarations are alike inadmissible." Therefore it was not admissible, because he was under no compulsion to tell the truth and was an unbeliever.

But it is claimed that by our code the common-law rule laid down by Greenleaf and others is changed. Section 1604, Code 1880, is as follows: " No person shall be incompetent as a witness because of defect of religious belief."

If this language lets in the evidence of an infidel at all, then I reply: This refers to a sworn witness before the court and original testimony, and not to the hearsay evidence of an infidel, called his dying declaration.

2. The court erred in excluding from the jury the testimony tending to show that Henry Brown had no religious belief whatever in his lifetime. This evidence was offered to discredit the hearsay declarations of Brown introduced by the State and admitted before the jury by the court. Certainly the jury were entitled to know all the facts surrounding Brown when he made his declaration in order that they might weigh this evidence intelligently. All the books hold, as well as this supreme court, that the jury, who are the sole judges of the credibility of witnesses and also of the credibility of the evidence introduced before them, are entitled to all the facts tending to sustain or impeach it. 9 S. & M. 120 ; 1 Greenleaf, § 160 ; 1 Cushman 355 ; Best's Principles of Evidence, § 165 ; *Moore* v. *State*, 12 Ala. 764 ; *Starkey* v. *People*, 17 Ill. 17.

3. That the admission of the testimony of Hill taken in a former trial was an error hardly admits of an argument, this court having settled the rule three times in the cases respectively of *Josephine* v. *The State*, 39 Miss. 614; *Major Jackson* v. *The State*, 56 Miss. 312, and *Farkas* v. *The State*, 60 Miss. 848.

*W. S. Chapman* also made an oral argument.

*P. C. Chapman,* on the same side.

The first instruction is obnoxious to the objection that it is vague, uncertain, and indefinite in failing to inform the jury what would constitute " willful fault, wrong, or contrivance " on the part of Hill. This instruction opens a wide field of speculation and is no guide for the jury. The charge to a jury must be plain and explicit, so plain and explicit that there can be no danger of misleading, no field for speculation, but a well-defined rule of law to direct them. *Archer* v. *Sinclair,* 49 Miss. 347 ; *Payne* v. *Green,* 10 S. & M. 507 ; *Southern Railway Co.* v. *Kendrick,* 40 Miss. 374. It is also contradictory to the defendant's instructions, and where an erroneous instruction is given the error is not cured by giving another, setting out a rule in direct conflict with the rule stated in the erroneous instruction. *Herndon* v. *Henderson,* 41 Miss. 584 ; *House* v. *Fultz,* 13 S. & M. 39. The jury were left to adopt such course as they might see proper, to regard or disregard either instruction in making up their verdict. *Herndon* v. *Henderson,* 41 Miss. 601. It would seem that this instruction cuts off all right of self-defense, and if Hill by any willful fault brought on the difficulty, though intending to use no deadly weapon, if Brown resorted to one, he would only be justifiable if he let Brown slay him. In other words, he should fold his hands and receive his death-wound at the hands of Brown without raising a hand to ward off the danger.

The second instruction is erroneous, because there was no evidence to support it. I claim that Hill was not the aggressor, and I can find no evidence tending to show that he was. If it was inferred that appellant commenced the difficulty, yet it would not necessarily follow, if he did so, that he did not kill deceased in the lawful defense of his person. If Hill commenced the conflict by assaulting Brown, or so menacing him as to justify the reasonable belief that he intended to assault him, Brown had a right to employ such force as was proportionate to the assault.

But if Hill ceased to fight or menace him, as the facts might warrant, the right of deceased to employ such force ceased, and as soon as that occurred the right of appellant to defend himself

revived.   Although a man is engaged in committing an offense, he loses thereby none of his rights of self-protection, further than the law authorizes the person injured to make defense.   2 Bishop's Criminal ·Law, § 571.   The· law of self-defense is but a law of necessity.   *Terrell* v. *Commonwealth,* Kentucky Court of Appeals. In the Law and Equity Reporter, August 1, 1877, quoted, Judge Fisher, in delivering the opinion of the court in the case of *Cotton* v. *The State,* 31 Miss. 513, says: "A man may begin a difficulty intending to inflict no violence, or next thing to none, on his antagonist, and may be so closely pressed as to be forced to use a deadly weapon in self-defense."

The court erred in admitting Brown's statement as his dying declaration.   It is a well-settled principle of law that if the deceased had any expectation or hope of recovery at the time of making such declarations, however slight, the declarations are inadmissible.   1 Greenleaf 184; *Commonwealth* v. *Haney,* 3 Mass. L. Rep. 13 S. C.; 1 Crim. Law, Mag. 270; *People* v. *Hodgdon,* 55 Cal. 72.   "The competency of dying declarations is a question. for the court, and it is erroneous to admit them in evidence in such case until full investigation of the circumstances under which they were made shows that they conform to the requirements of law." *Owens* v. *The State,* 59 Miss. 547, 548, 549.   It is essential to the admissibility of dying declarations, and it is a preliminary point to be proved by the party offering them in evidence, that they ·were made under a sense of impending death.   *McDaniel* v. *The State,* 8 S. & M. 401; *Nelms* v. *The State,* 13 S. & M. 506; *Brown* v. *The State,* 32 Miss. 441, 442; *Lambeth* v. *The State,* 23 Miss. 354, 355; *Merrill* v. *The State,* 58 Miss. 67.   It was not proven satisfactorily that Brown had abandoned all hope of life.

The court erred in excluding from the jury the testimony that Henry Brown had no religious belief in his lifetime.   The evidence would show that he claimed "That there was no hell or hereafter, and that a man received all his punishment during this life on earth."

The jury were entitled to all the evidence discrediting declarant's testimony.   Every court of final resort so holds.   The competency.

of the evidence is determined by the court—the credibility is a question for the jury. The exclusion of this testimony was error. *Lambeth* v. *The State*, 23 Miss. 355; *Nelms* v. *The State*, 13 S. & M. 506–8; 1 Greenleaf 160; Archbald 455, 7th edition. Though the court should receive a witness as competent in his religious principles, yet he might, it is presumed, be so far impeached as to destroy all credibility, and warrant the jury finally in saying that he was destitute of religious principles. Ib. 455. Such evidence is admissible on the issue of the credibility of the deceased. *People* v. *Sanford*, 43 Cal. 29; *State* v. *Elliott*, 45 Iowa 486; *People* v. *Cline*, 51 Cal. 597.

The credibility of the declaration is a question for the jury. *Moore* v. *The State*, 12 Ala. 764; *Starkey* v. *People*, 17 Ill. 17; *Commonwealth* v. *Corey*, 11 Cushing, 47 Mass.; *Donnilly* v. *State*, 2 Dutch. N. J. 483.

The court erred in admitting before the jury the testimony of the defendant, given under oath, charged with this same crime when he was tried by the committing magistrate.

Is it in the power of the judge to put the defendant on the stand as a witness in his own case, for the State or for himself—see § 1603, Code 1880—and Amendment Act 1882, pp. 109 and 110? Certainly not. Then how can a distinction be made, for every person who testifies at all in a judicial inquiry where he is accused in this State must of necessity go on the stand in his own behalf and by his own request, the State cannot force him to go. And is not the correct rule laid down in *Major Jackson* v. *The State*, 56 Miss. 312; *Farkas* v. *The State*, 60 Miss. 848?

*T. M. Miller*, Attorney General, for the State.

1. As to the admissibility of statements offered as dying declarations, the rule is that the court must judge, after a preliminary examination of the circumstances, as to the admissibility of the declaration. When admitted the jury judge of the weight, as in case of all other testimony. *McDaniel* v. *The State*, 8 S. & M. 401; Wharton on Cr. Ev., § 297.

If the court is satisfied that at the time the declaration was made the person making it had no hope of surviving the wound, then

the declaration is admissible. The inquiry is addressed to the state of the mind of the declarant at the time. Wharton Cr. Ev. 281.

2. Section 1604, Code 1880, removes the objection to the declaration based on the declarant's want of belief in a future state of rewards and punishments.

Wharton on Criminal Evidence, S. C. 291, says, "That the deceased was a disbeliever in a future state of rewards and punishments may, in the lowest view, be used to discredit his testimony, though it does not exclude in jurisdictions where the deceased, if a witness, would have been admissible." Citing State v. Elliott, 45 Iowa 486 ; People v. Sanford, 43 Cal. 29 ; People v. Chin, 51 Cal. 597 ; State v. Ah Lee, 7 Oregon 737.

3. Testimony given by an accused person who takes the stand voluntarily in his own behalf is always admissible against him, and the cases cited to the contrary do not seriously controvert this position. In the case of Farkas v. State and others the defendant had been examined as a witness. Questions were put to him. See State v. Eddings, 71 Mo. 545 ; State v. Glass, 50 Wis. 218 ; Wolf v. Comm., 31 Gratt. 833 ; Comm. v. Bradford, 126 Mass. 42; People v. De Soto, 49 Cal. 69 ; Wharton on Cr. Ev., § 664, and numerous cases cited.

The statement having been made under oath does not affect its admissibility, if voluntary. State v. Witham, 72 Maine 531. "If a person accused of crime takes the benefit of his own swearing he takes its risks." 72 Ill. 534 ; Dumar v. State, 63 Ga. 600.

4. The two instructions together announce the principle that self-defense may not be relied- on when the defendant has sought and brought on the encounter in which his own life has become imperiled. Abstractly there would be error because of a failure to state the qualification which admits the right of a combatant to save his life when he entered into the combat with no intention of using a deadly weapon. But this defect is cured by instructions for defendant.

The Attorney General also made an oral argument.

CAMPBELL, J., delivered the opinion of the court.

It is very questionable whether the "dying declaration" of Brown should have been admitted as such, and we would not be understood as approving the two instructions given for the State as universally true, and we are clearly of the opinion that the court erred in not permitting the testimony to show that Brown's religious belief was such as to detract from the value of his dying declarations, but as the verdict is one of which the appellant cannot complain in view of his own testimony we do not regard the errors as entitling him to a new trial. He was examined as a witness for himself before the committing court, and his testimony there was read in evidence on his trial in the circuit court. Although he objected to this it was clearly admissible. Where the State uses one as a witness in the investigation of a criminal charge the evidence thus obtained may not afterward be used against the person giving it. *Josephine* v. *The State*, 39 Miss. 613; *Jackson* v. *The State*, 56 Ib. 311; *Farkas* v. *The State*, 60 Ib. 847.

But where the statute makes an accused person a competent witness in his own behalf, and he testifies in the exercise of his right, this testimony may afterward be used against him.

No right of the appellant was violated in offering his own version of the encounter in which he killed Brown as evidence against him, and on this evidence he was properly convicted, and may felicitate himself that he was not found guilty of murder.

We fail to discover in this case any peculiar circumstances making it proper to release the appellant on bail pending his appeal. We suppose those circumstances were made manifest to the circuit court which admitted him to bail after conviction. If the peculiar circumstances in his case consist of what is disclosed by the affidavit in the record, the law was violated in admitting him to bail. That affidavit shows that he had a crop which needed his attention, and that he would be ruined financially by being confined and denied an opportunity to pursue his industrial vocation, and that his wife was frail and delicate.

Manifestly the law does not tolerate bail after conviction of felony on any such ground as this. It denies bail to a convict of

felony, except in the discretion of court or judge, " to be exercised with the greatest caution, and only when the peculiar circumstances of the case render it proper in the opinion of such court or judge." There was nothing peculiar or exceptional in the case of appellant shown by the affidavit referred to.

Imprisonment is doubtless generally inconvenient and undesirable to the person suffering it, and in every case it may be supposed that the party would like to be with his wife and be permitted to pursue his usual business, but the statute declares that one convicted of felony shall not have bail except as a special favor granted by court or judge, not on personal grounds but under peculiar circumstances to be judged of as a matter of sound judicial discretion.

*Affirmed.*