PATTERSON, Justice.
This is an appeal from the Circuit Court of Jackson County. There the defendant was found guilty of murder and sentenced to life imprisonment in the state penitentiary.
The primary issues to be reviewed are: Was the incriminating statement of the defendant voluntarily given so that it could be admitted into evidence, or was it the result of an offer of immunity and therefore inadmissible; and secondly, was the testimony of the accused given as a State’s witness at a preliminary hearing of a co- *625 defendant admissible in evidence against her in her trial for murder ?
On February 1, 1969, one Bud Sherman was killed while resisting an armed robbery attempt. An intensive police investigation ensued which resulted in the arrest of Richard Steele who was subsequently tried and acquitted of the murder. Thereafter, the appellant, while incarcerated in the Jackson County Jail pending her appeal on another charge [Miller v. State, 234 So.2d 297 (1970)], professed to have knowledge of the murder. The hints of knowledge by the appellant of the unsolved crime were seized upon by the law enforcing officers as well as defense counsel as a possible source for the solution of the murder. Defense counsel, being informed by the appellant that she knew where the murder weapon was concealed, conferred with the circuit judge of the district with regard thereto. This conference resulted in a directive to the sheriff of the county, as well as defense counsel and others, to proceed to a cemetery in Grand Bay, Alabama, in search of the murder weapon. The search revealed nothing.
The conference between the judge and defense counsel was unfortunate in that it resulted in a misunderstanding between them, which need not be elaborated upon, it being sufficient to state that defense counsel departed the conference believing that his client had been offered immunity from prosecution if she cooperated with the State in its effort to solve the murder. This belief was transformed into reality by defense counsel informing the appellant that she had been granted immunity from prosecution and advising her to cooperate with the State.
Thereafter, at the request of the district attorney and with the consent of her attorney, appellant came to Jackson, Mississippi, and underwent a polygraph (lie detector) test, after which she signed a statement in the nature of a confession as follows:
I, LYNDA GAY MILLER, make the following statement to L. G. Winstead and Bobby Parker, whom I know to be officers of the Mississippi Highway Patrol. No threats or promises have been made against me, and I know that anything I might say may be used in court of law. I have been advised of my right to a lawyer.
On Friday night before Bud Sherman was killed, Leo Miller, Sonny Evans, and Eddie Ray Baker were planning the robbery of Bud Sherman’s store in Escataw-pa, Mississippi. They planned it to be done on Saturday night. Leo told me being as the law was looking for him, would I pick them up at Roger’s Washateria and take them to Bud Sherman’s store and wait for them and bring them back to their car. I told him I would rather not, but he begged me to because the law was looking for him. I asked him if that was all I had to do and he said yes. When I picked him up at Roger’s Washa-teria, I took them to Bud Sherman’s store. I parked on the road north of Bud Sherman’s store. Sonny went in and came back out and stood beside the ice machine. While he was standing there, a woman, came, went inside, came back out. Then Eddie Ray got out, went around beside the store on the opposite side and Sonny waited on the front. I was sitting in the car. Sonny got on the side of the store when Buddy came out and he opened the driver’s side of the truck to put something in it. Sonny said, “Hold it. Give me that bag.” When he gave him the bag, he just looked in it and threw it down. When he did, Bud pulled back a gun on him and shot at him. Sherman moved around to the opposite side of the truck and Eddie Ray started shooting at him from the south side of the store. Then Bud-went around to the driver’s side and opened the door and was shielding himself from both of them. When he tried to get back into the store, he hadn’t locked it up, and Sonny shot him. I got scared and took off. Sonny ran out in front of the store, down beside the fence beside the store, holding his *626 shoulder. Eddie Ray ran behind the store. Then I went down Helena road and turned around and came back. Pete Miller, Deputy Sheriff, was there holding Bud Sherman in his lap. I just took a quick glance and took off and went home.
We must determine whether this confession was voluntarily given vel non. The appellant was accompanied to Jackson for the purpose of taking the lie detector test by two members of the Mississippi Highway Patrol. One of those accompanying her, Robert Parker, an investigator for the patrol, testified in part as follows:
Q. Now, at this point, when you first talked to — When you talked to Lynda Miller, did you at this point, or at any time during your conversation with her, promise her immunity?
A. I didn’t, no, sir. I’m not in a position to promise her—
Q. Did you at any time tell her that she didn’t have anything to worry about, if she’d cooperate with the State?
A. Well, when I was talking with Lynda, I told her it would probably go a lot easier on her—

A. —that it would go a lot easier on her, it would help her a great deal. And after the confession that Leo gave, I thought that she would come out pretty good.

A. Yes, he was there; but we didn’t make a promise to her, just said it would probably go a lot easier on her, after what she said and Leo gave his statement.
* * * * * *
Q. All right sir. Now, then on the way up there to Jackson, did you and Mr. Winstead, or one of you, did you all not have quite a conversation with Lynda Miller at this time, telling her that she didn’t have anything to worry about, that the State had promise her immunity, or words to this effect?
A. We didn’t promise her immunity; we just told her it would probably help her a great deal.
‡ ‡ ‡ * ^ ifc
Q. Now, then, operating from this atmosphere, would you not say that your conversation with Lynda Miller would tend to lead her to believe that she was going to get immunity; if, in fact, you didn’t tell her that?
* # * * * *
A. Every conversation I have had with Lynda, on my part, I would say that I kind of led her to—
Q. Expect immunity, or leniency?
A. Yes, sir.
On further interrogation by the State’s attorney this witness qualified the above testimony somewhat by stating that the statements were made during the return trip to Jackson County subsequent to the lie detector test and the confession. Nevertheless, considering this testimony, along with the other evidence relating to the confession, including the fact that the defendant had been advised by her attorney, whether mistakenly or otherwise, that she had been granted immunity, we can only conclude that the confession was involuntarily made and as such was inadmissible. We are strengthened in this position by the testimony of other law enforcing officers who testified that they thought the defendant had been granted immunity.
In the recent case of Miller v. State, 243 So.2d 558, 559 (Miss.1971), we held:
The trial court found the appellant’s statement to have been freely and voluntarily made. It did not, however, rule upon the statement of the sheriff with regard to whether it was an inducement or offer of leniency to the appellant if he would confess. In Robinson v. State, 247 Miss. 609, 613, 157 So.2d 49, 51 (1963), *627 we stated: “ * * * a mere exhortation or adjuration to speak the truth will not exclude a confession, but where such adjuration is accompanied by an expression that it would be better for the accused to tell the truth, some courts have refused to admit such confession. * * * ”, citing Mathews v. State, 102 Miss. 549, 59 So. 842 (1912) and Frazier v. State, 107 So.2d 16 (Fla.1958). We held in Robinson that the statement or confession made subsequent to an exhortation to “square with the State, or the City, whoever the crime was against” and with the “ ‘man upstairs’ and that if he didn’t, he wasn’t trying to help himself” was the equivalent of an inducement, rendering the statement inadmissible in evidence as being involuntarily made.
In Mitchell v. State, 24 So. 312 (Miss.1898), we held that a confession given by the defendant was not voluntarily made subsequent to the defendant’s being advised by the sheriff that it would be better for him to tell all about it.
In Agee v. State, 185 So.2d 671, 674 (Miss.1966), we were of the opinion that a confession was involuntarily given. We stated:
A confession made after the accused has been offered some hope of reward if he will confess or tell the truth cannot be said to be voluntary. This Court has long adhered to the rule that when the offer of reward or hope of leniency is made by a private individual the same rule applies. In Clash v. State, 146 Miss. 811, 112 So. 370 (1927), a confession was held inadmissible when it was signed by the accused after a private individual had told him that, “ * * * ‘if he would tell us about the money, and return it, we would let him out of jail on bond.’ ” In Johnson v. State, 89 Miss. 773, 42 So. 606 (1906) private citizens told the accused that, “ * * * it would be better for him to confess, as it would go lighter with him if he told the truth.” The confession that followed these statements by private citizens was held inadmissible.
In view of these authorities and the facts before us, we are of the opinion that the lower court erred in admitting the confession into evidence.
A short time after giving the confession, the appellant was called as a witness by the State and testified at the preliminary hearing of Houston (Sonny) Evans. This testimony clearly branded the appellant as an accomplice to the murder. The court reporter’s transcript of this testimony was later introduced by the State over the objection of the defendant in its rebuttal evidence against the appellant. Since she did not testify in her own behalf, we think it reasonable to conclude that this evidence was not offered for the purpose of impeaching the testimony of the defendant, but rather was offered to strengthen or corroborate the confession previously placed in evidence. Inasmuch as it was introduced for consideration by the jury in its deliberations, the question is raised whether the defendant was deprived of a fair trial in view of the Fifth Amendment to the United States Constitution and Article 3, Section XXVI, Mississippi Constitution (1890), which provide that no person shall be compelled to give testimony against himself.
The stenographic notes of the testimony at the preliminary hearing indicate that the appellant was not induced by offer of reward or otherwise coerced into testifying. It also reflects that she was then aware that a murder or attempted robbery charge would probably be brought against her. The record further reflects that though she had retained counsel, he was unadvised of the preliminary hearing and was not present when the defendant was called and used as a witness for the State. The testimony elicited by the State from the appellant was substantially the same as the above-quoted confession and was sufficient without more to establish guilt. Though probably not intended, the appellant was for all practical purposes tried for murder at the preliminary hearing of another.
*628 In Hill v. State, 64 Miss. 431, 440, 1 So. 494, 496 (1887), we held:
* * * Where the state uses one as a witness in the investigation of a criminal charge, the evidence thus obtained may not afterwards be used against the person giving it. Josephine v. State, 39 Miss. 613; Jackson v. State, 56 Miss. 311; Farkas v. State, 60 Miss. 847. But where the statute makes an accused person a competent witness in his own behalf, and he testifies in the exercise of his right, his testimony may afterwards be used against him. * * *
The rule announced in Hill, supra, was elaborated upon in Steele v. State, 76 Miss. 387, 394, 395, 24 So. 910, 911 (1899), wherein it was reannounced as follows:
* * * But since the passage of the act making defendants witnesses in their own behalf (Act Feb. 27, 1882; Code 1892 § 1741), this principle has undergone necessary modification. When a defendant now offers himself voluntarily as a witness in his own behalf, in any form of judicial investigation, when charged with a crime, he, thus assuming of his own accord the character of witness, must accept all the incidents and responsibilities attaching to the character of witness. And in such case, if his sworn statement has been reduced to writing by a coroner or magistrate, it may be offered against him in the trial in the circuit court; and, if not, he may be contradicted by witnesses who heard his testimony thus voluntarily given. This is settled in this state and elsewhere. * * * It is still true, of course, that, when the state compels a defendant to testify against another or himself, such testimony cannot he offered against him, nor could he be cross-examined touching it. * * * (Emphasis added.)
As mentioned, the defendant was used as a witness for the State at the preliminary hearing of Evans. She did not voluntarily appear in her own behalf. In fact, she was transported to the courtroom from her residence, being free on bond at the time, by a deputy sheriff; she was called as a witness by the State; she was sworn as a witness for the State; and testified in response to questions propounded by the State’s attorney. From an examination of the cases cited by the State in support of its position that the appellant voluntarily testified it appears that in each of them the accused was not called as a witness for the State, but rather testified in his own behalf as a defendant. This distinction is material and strips these cases of their authority when applied to the present facts. It is true that the defendant testified that she was offered no reward or inducement to testify. It is also true that neither was she advised, though aware that she could be tried for attempted robbery and murder, that the very evidence she was then giving could be used against her. We think this to be of significant import when considered with the fact that she had been previously advised by her attorney that the State had offered immunity. In Smith v. State, 160 Miss. 227, 232, 133 So. 681, 682 (1931), though the Court there declined to decide whether testimony of a defendant who had testified for a co-defendant under compulsion of court process without information as to his rights to decline to testify would be admissible or not, it used this significant language with regard thereto, stating:
* * * In the case in 56 Miss. 312, supra, the court held that it was immaterial that the trial judge instructed the defendant that he did not have to testify to anything that made a criminal offense against himself, but, when the state had compelled him to testify against his will, his testimony was not admissible at all. * * *
And see Moore v. State, 242 So.2d 414 (Miss.1970), wherein we stated with regard to immunity, the following:
* * * It was the understanding, whether rightfully or mistakenly, of the defendant and his attorney that an agreement had been reached whereby if ap *629 pellant cooperated with the state in the prosecution of the other men, his indictment for burglary would be reduced to a lesser offense to which he might plead guilty. (242 So.2d at 415).
******
The record shows that appellant appeared before the grand jury and testified. There was no subpoena issued for him. He did testify and the question is whether or not his appearance before the grand jury was voluntary. Looking at the entire record, we cannot escape the conclusion that his appearance was a result of pressure resulting from the agreement which he, undoubtedly, thought was in existence. This understanding, which he thought he had obtained, and pressure therefrom destroyed the voluntariness of the appearance. The grand jury returned an indictment against the appellant using his testimony as at least a partial basis thereof. We cannot condone, under a situation of this kind, the indictment of a person who appears before the grand jury under pressure resulting from what was certainly a misunderstanding. (242 So.2d at 417).
We conclude that the testimony of the defendant given as a witness for the State at the preliminary trial of another could not later be introduced against her as it violates the right afforded by the Fifth Amendment to the United States Constitution and Article 3, Section XXVI, Mississippi Constitution (1890), that a defendant shall not be compelled to testify against himself and also is not in accord with the cited Mississippi authorities. We hasten to add that we do not intend to infer by the foregoing statement that the testimony would have been inadmissible for purposes of impeachment had the witness testified in her own behalf and had the situation warranted it.
The State’s entire case consisted of the confession and the testimony given at the preliminary hearing. Each was inadmissible in evidence, and was prejudicial to the extent that the case must be reversed and in the absence of other evidence sufficient to sustain the indictment, the defendant is discharged.
Reversed and the defendant discharged.
All Justices concur.