380 So.2d 251 (1980)
Larry CRAFT,
v.
STATE of Mississippi.
No. 51685.
Supreme Court of Mississippi.
February 27, 1980.
Robert S. Reeves, McComb, for appellant.
*253 A.F. Summer, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BROOM and COFER, JJ.
*252 PATTERSON, Chief Justice, for the Court:
Larry Craft was convicted of armed robbery and sentenced to fifteen years by the Circuit Court of Pike County. Aggrieved by the verdict and sentence, he appeals.
In March of 1977 the Grand Jury of Pike County returned an indictment charging Larry Craft, Raymond Webb and James (Bilbo) Jackson with armed robbery. Webb and Jackson pleaded guilty. Craft denied his guilt and was tried with the result mentioned.
On December 21, 1976, three unidentified black males robbed the Seago Quik Mart of $352.11. Investigating the robbery, the McComb police could not find the culprits, but for some undisclosed reason they suspected Larry Craft and therefore processed his name through a nationwide crime broadcast which ultimately disclosed that Craft and Jackson were in the custody of the Chicago, Illinois Police Department.
Officers Barkdull and Oliver of the McComb Police Department obtained custody of Craft and Jackson on January 22, 1977, and returned them to McComb, Mississippi by automobile. The uncontradicted evidence shows that prior to departing Chicago both Craft and Jackson received their Miranda warnings. However, during the trip to McComb, Craft and Jackson, overheard by officers Barkdull and Oliver, argued about who had the possession of the weapon used in the armed robbery of December 21, 1976.
On January 23, the day after Craft was returned to McComb, he again received a Miranda warning and signed a waiver acknowledging this fact. Thereafter, evidently believing Craft would make a statement, Barkdull summoned the police department stenographer, Whittington. Craft then related his participation in the crime to officers Barkdull, Kennedy and stenographer Whittington. The officials then transcribed the oral statement, but Craft refused to sign it.
Subsequently, Craft was removed from the city jail in McComb to the Pike County Jail in Magnolia, Mississippi, from which he escaped. He was later apprehended in Flint, Michigan. During his detention there, Craft related to officers Caterer and Brink of the Flint Police Department the details of the robbery in McComb, Mississippi on December 21.
The trial court conducted suppression hearings concerning the admissibility of the statements made by Craft on the automobile trip from Chicago to McComb, the statement made in the McComb Police Department, as well as the statements made in Flint, Michigan. The trial court determined the statements to be admissible, and the state consequently introduced them during its case in chief. The propriety of permitting the statements into evidence forms the crux of this appeal.
Appellant contends the requirements of Agee v. State, 185 So.2d 671 (Miss. 1966), require reversal. As observed, the statements were made at different times, in different places, to different officers, under different circumstances, each requiring our attention.
Appellant first notes that police officer Oliver, who accompanied Barkdull to Chicago to return the co-indictees, failed to appear on behalf of the state as a witness to the conversation between Craft and Jackson, and argues the state therefore failed to comply with Agee. We observe as did the trial court, that the police officers did not elicit exchange between the co-indictees, but rather incidentally overheard the voluntary conversations between the two. No testimony suggests that these conversations resulted from violence, threats, or coercion, subtle or otherwise, intended to produce admissions. Craft made the allegation that sometime before the conversation in the automobile Barkdull "roughed [him] up" in Chicago. Barkdull denied this. *254 While it is true that Oliver did not testify concerning the alleged incident, it must be emphasized that no testimony in any way connected the "roughing up" to the conversation which later occurred in a different place. Indeed, the car conversation appears to have been purely voluntary, as the trial court found. The pronouncements of Agee, supra, apply only to statements alleged to have been involuntarily made either as the result of threats or coercion by police officers to elicit a confession. The conversations here fall outside the ambit of the Agee rule, in our opinion.
Craft next contends the statement given by him in the McComb jail was inadmissible under Agee because produced by force. At the suppression hearing he testified that officer East came to his cell alone and sprayed him with mace, thereby through intimidation eliciting the statement later made to other officers. Additionally, he argues his refusal to sign the transcribed statement rendered it inadmissible.
East denied Craft's charge, and the trial court resolved the issue by rejecting Craft's testimony and accepting East's denial. In view of East's denial and the fact that no other officers were present, we find no Agee problem with the statement given after the alleged mace incident.
With respect to the admissibility of the unsigned statement, the issue becomes that of the accuracy of the statement rather than its voluntariness. Although unnecessary to the decision we reach, we do observe that each of the officers present when the oral statement was made testified. None used any manner of coercion to obtain the statement, and Craft does not contend otherwise apart from his reference to the alleged mace incident. The officers present when Craft gave his oral statement testified to the accuracy of the transcript of it. Indeed, Craft virtually admits the accuracy of the transcript, arguing simply that his refusal to sign somehow deprived it of admissibility. Under these circumstances, we are of the opinion that Agee has no application, because it concerned voluntariness, not accuracy. In Wong Sun v. U.S., 371 U.S. 471, 490, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Court stated: "The fact that the statement was unsigned, whatever bearing this may have upon its weight and credibility, does not render it inadmissible; Wong Sun understood and adopted its substance... ." We think this language controlling here, because Craft himself corroborated the testimony of the officers by contemporaneously acknowledging the accuracy of the transcript. Cf. Ray v. State, 213 Miss. 650, 57 So.2d 469 (1952), in which we held an accused's confession taken by a tape recording was properly admitted into evidence when it was shown to be an accurate reproduction of the accused's statement. See also Sanders v. State, 237 Miss. 772, 115 So.2d 145 (1959), and cf. Jordan v. State, 320 So.2d 376 (Miss. 1975). We conclude the trial court properly admitted the authenticated unsigned transcript.
The next argument concerns the statements of Craft made to the police officers in Flint, Michigan. He contends the court erroneously admitted the statements, because he there received no Miranda warning. Officer Caterer of Michigan testified that he did advise Craft of these rights. The other Michigan police officer did not testify. However, we observe Agee, supra, antedated Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and necessarily did not envision the myriad implications of that seminal case. Under the present state of the law, we reject the appellant's contention that Agee requires all officers present to testify as to whether the Miranda warning was given. Though it might be better practice to offer all present when delivery of the warning is factually disputed, Agee does not compel such a burdensome parade of witnesses.
Agee speaks only to the question of voluntariness, and Craft raised no issue as to the voluntariness of the Flint statement. Miranda requires the warning of constitutional rights prior to interrogation, adding that the state bears a heavy burden of proving compliance; but nothing in that decision indicates compliance can only be *255 established by presenting all persons present when the warning was allegedly given. We decline the appellant's invitation to expand the narrow rule of Agee to accommodate the distinct rule of Miranda. In our opinion, the court below correctly decided, following a properly conducted suppression hearing, that both rules had been completely satisfied in admitting the out-of-court statements in issue.
Craft next contends the court improperly denied his motion to quash the special venire which he moved for and obtained. The venire consisted of forty-five names. Only twenty-three of those whose names were drawn appeared. Of these twenty-three, four were dismissed, leaving nineteen prospective jurors, fifteen white and four black. The appellant, a black male, contends the jury composition was racially biased. The trial court held, and we think properly so, that no notice of race was taken in the venire's selection, and additionally, that the defendant had access to the regular panel of jurors called for that week. The evidence submitted by the appellant totally fails to show any purposeful discrimination by the state. If it did, of course, the burden would be upon the state to prove the absence or underrepresentation of blacks on the jury resulted from something other than intentional discrimination. Spencer v. State, 240 So.2d 260 (Miss. 1970). It is settled that persistent absence or underrepresentation of a race on juries raises a prima facie case of discrimination. Williams v. State, 210 So.2d 780 (Miss. 1968); Watts v. State, 196 So.2d 79 (Miss. 1967); Shinall v. State, 187 So.2d 840 (Miss. 1966); Bass v. State, 254 Miss. 723, 182 So.2d 591, 183 So.2d 483 (1966); and Harper v. State, 251 Miss. 699, 171 So.2d 129 (1965). On the record before us, however, no testimony whatsoever shows such a history of discrimination. We therefore conclude that the appellant failed to establish a prima facie case of discrimination and accordingly uphold the trial court's denial of the motion to quash.
The appellant next contends that the court erred in denying an instruction concerning the statements made by him to police officers and to his co-indictee Jackson. The proffered instruction states that the jury should consider the circumstances under which the statements were made to determine their admissibility as evidence. In Ratliff v. State, 317 So.2d 403 (Miss. 1975), we said that "[t]he jury does not pass upon the competency of the confession, but the jury does pass upon the weight and credibility of the confession." See also Rhone v. State, 254 So.2d 750 (Miss. 1971). We again decline to put a trial court in error for refusing an instruction which sets forth in incorrect principle of law. In brief, the trial court rules upon the admissibility of a statement; the jury determines its weight just as it considers the weight and worth of other relevant evidence.
The final assignment relates to the sufficiency of the evidence to support a verdict of guilty. We have reviewed the evidence in detail and repeat that which has been stated many times before. The sufficiency of the evidence is largely left to the sound determination of the jury, and if there appears testimony in the record to support the verdict, it will not be disturbed. In our opinion, there is ample evidence to support the verdict and accordingly, it will not be disturbed.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.