PATTERSON, Chief Justice,
For The COURT:
In the Circuit Court of Lowndes County, George King, Jr., was tried on a charge of arson, convicted and sentenced as an habitual offender to serve a term of ten (10) years in the custody of the Mississippi Department of Corrections without reduction, suspension or eligibility for probation or parole.
King appeals, contending that the trial court erred:
I. In overruling King’s motion to suppress a written statement given June 22, 1982;
II. In refusing Defendant’s Instructions D-l, D-1B and D-4;
III. In sentencing King as an habitual offender without allowing him to be heard and because Mississippi Code Annotated, § 99-19-81, is unconstitutional; and
IV.By allowing the District Attorney to appear as counsel for the State and also to testify as a witness for the State.
This case arises from a series of fires on May 12, 1981, which destroyed two lounges in Columbus and another outside the city limits. All three night clubs were the property of George Derden. While arson was obvious in all three cases, investigation by city and county detectives proved fruitless for thirteen (13) months.
On June 21, 1982, George King, Jr., who had been working as an informer in the fire cases, phoned Columbus Police Officer Pete Bowen. King told Bowen he was afraid he was becoming known as an informer and that he wanted to be protected. King’s agitation prompted Bowen to use an outstanding warrant to arrest King on a simple assault charge. This was done for King’s protection only.
The next morning King conferred with his attorney, Darrell Reeves. Reeves then told Bowen, Lowndes County Investigator Max Blanton, and Columbus Chief of Detectives Bud Walters that King wanted to “strike a deal” concerning the fire cases with the district attorney.
The detectives then questioned King, who verified what Reeves had said. However, King insisted on dealing with the district attorney in person.
King’s insistence led Officers Bowen and Blanton to drive King and his girlfriend Debra Hayes to Hattiesburg, where District Attorney John Montgomery was attending National Guard camp. King, Hayes and the officers spent the night in a hotel and the next morning met Reeves and Montgomery at the sheriff’s office. There Montgomery told King that he would not have to serve any time if he would give a truthful statement implicating those responsible for the fires and further if he would testify against those persons in court. Montgomery also warned King that if at any point after giving the statement King reneged on the agreement, he would be prosecuted.
*767 After King agreed to these terms, Montgomery left the office. Bowen then advised King of his Miranda rights in the presence of Blanton and Reeves, and King signed a rights waiver. He then gave a statement which Bowen reduced to writing.
The essence of the statement is George Derden offered King $1500 to burn the three bars. On May 12, 1981, Derden and King put a mixture of gasoline and lighter fluid into some gas cans and put the cans inside each of the three lounges. Later that night King and Richard Dismuke set the bars on fire.
After recanting the statement and refusing to testify against Derden, King was prosecuted for and convicted of arson.
On this appeal King argues first that the trial court erred in overruling his motion to suppress the statement.
After hearing evidence on the motion to suppress the statement, the court overruled the motion, stating:
... It seems that the entire deal was concocted and initiated by the defendant. ... It appears throughout that the defendant was calling the shots. I say I don’t think it’s any question about the freeness and voluntariness of the statement because his attorney was present at all times. His attorney was present when he was given the Miranda warning, and, in fact, signed the warning as a witness, and also the statement that was given at that time as a witness, and not only the officers present, but his own attorney testified the statement was freely and voluntarily given as a result of a bargain the defendant had extracted from the state. The court feels that the statement was certainly freely, voluntarily, knowingly and intelligently given; that the defendant knew exactly what he was doing; he knows now what he was doing ... and he was advised that if he reneged that he would be prosecuted; he understood that, and to go make an agreement with the state such as this, and then renege on it and escape any prosecution or punishment would appear to me that most every defendant would begin striking a bargain with the state... Therefore, it is the opinion of the court that the motion should be and it is hereby overruled. (R. 249-251)
We are of the opinion that the trial court ruled correctly. In reaching this conclusion we are mindful of the general rule that to be admissible a confession “must be free and voluntary, that is, not produced by inducements engendering either hope or fear ...” Bram v. United States, 168 U.S. 532, 557-58, 18 S.Ct. 183, 192-93, 42 L.Ed. 568, 578 (1897). We are cognizant of the long line of federal and Mississippi cases adhering to this rule. However, we conclude the facts of those cases distinguish them from the present case.
King relies heavily on Miller v. State, 250 So.2d 624 (Miss.1971). That case involved a defendant, incarcerated pending appeal of her conviction of attempted kidnapping, who insinuated that she could give information about an unsolved murder. Her attorney discussed the matter with the circuit judge and “departed the conference believing that his client had been offered immunity from prosecution if she cooperated with the state in its effort to solve the murder.” 250 So.2d at 625. Defense counsel communicated this belief to Miller, who later gave a statement implicating herself and Houston Evans. Shortly thereafter Miller was called by the state as a witness at the preliminary hearing of Evans. There she gave testimony which clearly labeled her as an accomplice to the murder, for which she was later indicted and tried.
At Miller’s murder trial both her statement and the transcript of her testimony in Evans’ hearing were introduced into evidence, and Miller was convicted. We reversed, holding in part that the statement was the result of an offer of immunity and was therefore inadmissible.
We conclude the foregoing facts differentiate Miller from the present case on a crucial point. Miller followed her attorney’s advice to cooperate with the state by *768 giving a statement. By “cooperating” she bought herself a murder trial with the fruits of her “cooperation” as the main piece of evidence against her. Therefore in Miller it was the defendant who, through misunderstanding or otherwise, was left in a disadvantaged position. Stated simply, it was the defendant who was aggrieved when the state did not comply with the terms of the bargain as she' understood it.
In this case, however, it is the defendant who did not fulfill his part of the agreement; it is the state who is aggrieved. Had King testified against Derden and not recanted his statement, and if the state had subsequently prosecuted King for arson, then this case would be more analogous to Miller, but those facts are not before us. We are confronted instead by a defendant who in the presence of his attorney was clearly advised that he would be prosecuted should he repudiate the agreement.
We also distinguish Sanders v. State, 435 So.2d 1177 (Miss.1983), wherein we held inadmissible a confession attached to a guilty plea offered and later withdrawn. Unlike Sanders, King had not been indicted at the time he made his statement; therefore, the coercive effect arising from an arraignment, trial, and possible imprisonment does not exist in this case as it did in Sanders. Sanders thus does not require reversal here.
In holding that King’s statement was made voluntarily and is thus admissible, we find it useful to consider the reasons behind the exclusion of involuntary confessions as stated in United States v. Powe, 591 F.2d 833, 839-41 (D.C.Cir.1978). We observe none of the reasons apply to this case.
The first rationale is the unreliability of statements obtained by coercion or improper influence. United States v. Powe, 591 F.2d at 840. We find no coercion or improper influence where the giver of the statement made the initial contact with the police and initiated an agreement containing his own terms.
Secondly, due process forbids use of involuntary statements whether or not they are true. Due process is offended where “an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will.” Blackburn v. Alabama, 361 U.S. 199, 206-07, 80 S.Ct. 274, 280, 4 L.Ed.2d 242, 248 (1960), cited in United States v. Powe, 591 F.2d at 840. At the time King gave his statement he was not an “accused”; nor was anyone attempting to “wring” a confession out of him.
A third concern is respect for the individual’s freedom of will. Again, nothing in the record indicates the statement was anything other than a manifestation of King’s free will.
Fourthly, the courts are interested in deterring improper police conduct. As the United States Supreme Court has stated:
Bram dealt with a confession given by a defendant in custody, alone and unrepresented by counsel. In such circumstances, even a mild promise of leniency was deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess.
Brady v. United States, 397 U.S. 742, 754, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747, 759 (1970), cited in United States v. Powe, 591 F.2d at 841. (Emphasis added.)
King was not in such a vulnerable position when he gave the statement. He was not under arrest for arson; further, his attorney was present throughout the procedure.
Finally, it has been stated that “the very integrity of the criminal justice system is compromised when it operates to take advantage of a person whose volitional capacity is seriously impaired.” United States v. Powe, 591 F.2d at 841. From the facts in this case we cannot conclude that anyone took advantage of King while his “volitional capacity” was impaired. Rather, we agree with the circuit judge that King ini *769 tiated the agreement; he insisted that his own terms be followed; that he was represented by counsel at all times during the process; that he was warned of the result of reneging on the agreement; and that he freely and voluntarily gave a statement as part of the agreement that he later chose to reject. For these reasons, we are of the opinion the motion to suppress was properly overruled.
King’s second argument is that the court erroneously refused three instructions which would have put before the jury the issue of whether King’s statement was voluntarily given.
Craft v. State, 380 So.2d 251 (Miss.1980), involved the refusal of a similar instruction. In that case we held, “We ... decline to put a trial court in error for refusing an instruction which sets forth an incorrect principle of law. In brief, the trial court rules upon the admissibility of a statement; the jury determines its weight just as it considers the weight and worth of other relevant evidence.’’ 380 So.2d at 255.
While the trial court refused to allow the jury to rule on the admissibility of the confession, it did instruct the jury as follows:
You are the sole judges of the facts in this case. Your exclusive province is to determine what weight and what credibility will be assigned the testimony and supporting evidence of each witness in this case. You are required and expected to use your good common sense and sound honest judgment in considering and weighing the testimony of each witness who has testified in this case.
By this instruction the jury was informed that their function was to determine the weight and credibility of the evidence, including the confession which had been ruled admissible by the court. We are of the opinion this was a proper application of the law and that no error was committed here.
In his third proposition King makes two arguments relating to the court’s sentencing him as an habitual offender. He argues first that he was not given an opportunity to be heard on the issue of his prior convictions. However, this contention ignores King’s stipulation that he had twice been convicted of assault. The court based its enhanced sentence both on this stipulation and on certified copies of King’s prior felony convictions. In view of the record, this argument is without merit.
King’s second ground for reversal of sentence is based on the recent United States Supreme Court case of Solem v. Helm, — U.S. -, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). King argues this case renders Mississippi Code Annotated, § 99-19-81 (Supp.1983), unconstitutional. We reject this contention. A cursory look at Helm reveals it did not purport to declare all recidivists’ statutes such as § 99-19-81 unconstitutional; rather, it held the Eighth Amendment prohibits a life sentence without parole for a seventh non-violent felony. We do not think the case goes so far as to make unconstitutional a sentence of ten years for arson where the defendant has prior felony convictions for aggravated assault and assault with intent to murder. Therefore we are of the opinion Helm does not require resentencing in this case.
Lastly, King contends the court improperly allowed the district attorney to appear as counsel for the state and also to testify as a witness for the state.
We encountered this issue in Jenkins v. State, 242 Miss. 646, 136 So.2d 580 (1962):
As to the eligibility of a district attorney to be a witness for the State, in a case he is prosecuting, the general rule is that “Although a prosecuting attorney is competent to testify, his testifying is not approved by the courts except where it is made necessary by the circumstances of the case, and, if he knows before the trial that he will be a necessary witness, he should withdraw and have other counsel prosecute the case. The propriety of allowing the prosecutor to testify is a matter largely within the trial court’s discretion.” (Emphasis added.) 242 Miss, at 654, 136 So.2d at 583.
*770 The record divulges “other counsel” Forrest Allgood did prosecute this case; Montgomery did not. While Montgomery made one objection during the hearing on the motion to suppress, this was outside the presence of the jury. We conclude District Attorney Montgomery followed the course of action prescribed by Jenkins: he withdrew and allowed other counsel to try the case. We find no merit in this assignment of error.
Finding no reversible error in the record, we conclude King’s conviction and sentence should be affirmed.
AFFIRMED.
WALKER and ROY NOBLE LEE, P. JJ., and BOWLING, HAWKINS, and PRATHER, JJ., concur.
DAN M. LEE, ROBERTSON, and SULLIVAN, JJ., dissent.