**UNITED STATES of America**

v.

**Kim L. POWE, a/k/a "Kim," Appellant.**

**No. 77–1172.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 30, 1977.

Decided Nov. 15, 1978.

As Amended Nov. 22, 1978.

Rehearing Denied Jan. 19, 1979.

Jeffrey M. Albert, Washington, D. C. (appointed by this Court), for appellant.

Jonathan Lash, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Steven R. Schaars, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Eric Sirulnik, Washington, D. C., also entered an appearance as co-counsel for appellant.

Before BAZELON, TAMM and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge BAZELON.

Dissenting opinion filed by Circuit Judge WILKEY.

BAZELON, Circuit Judge:

■ Appellant, Kim L. Powe, was convicted by a jury of distributing one tablet of phenmetrazine in violation of 21 U.S.C. § 841(a). She contends that reversal is required because the trial judge permitted the government to impeach her credibility by introducing evidence of admissions of guilt she made in response to offers of leniency. Although appellant did not raise this issue at trial, it is firmly established that self-incriminating statements induced by promises or offers of leniency shall be regarded as involuntary and shall not be admitted into evidence for any purpose.[1] Therefore, in the circumstances of this case we remand the record to the district court for further proceedings to determine whether appellant's alleged admissions were obtained in a manner consistent with Fifth Amendment principles.

I

On May 18, 1976, Officer Gregory Green of the Metropolitan Police Department was operating as an undercover agent in Northwest Washington, D. C. At approximately 2:15 in the afternoon, on a corner at 4th and M Streets, Green was approached by Arthur Harris, a man he believed to be a "known narcotics dealer." Transcript (Tr.) 14–15. Harris offered to sell Green some

---

1. The standard formulation of the voluntariness test is found in *Bram v. United States,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897):

> But a confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. * * * A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted.

This test was recently reaffirmed by the Supreme Court in *Hutto v. Ross,* 429 U.S. 28, 30, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976) (per curiam). *See generally Brady v. United States,* 397 U.S. 742, 754, 90 S.Ct. 1463, 125 L.Ed.2d 747 (1970); *Malloy v. Hogan,* 378 U.S. 1, 7, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Hopt v. Utah,* 110 U.S. 574, 585, 4 S.Ct. 202, 28 L.Ed. 262 (1884); *see also The King v. Warickshall,* I Leach C.L. 263–264, 168 Eng.Rep. 234, 235 (K.B.1783) (to "a confession forced from the mind by the flattery of hope, or by the torture of fear . . . no credit ought to be given").

phenmetrazine, and when Green accepted the offer, Harris turned to a woman standing next to him and told her to hand Green a pill. *Id.*

Although Officer Green did not recognize the woman with Harris at the time of the alleged transaction, he allegedly saw her later when Harris was booked for his role in the offense [2] and again in the courtroom at Harris' preliminary hearing.[3] After seeing appellant in the courtroom, Green arrested her with the assistance of Detective Rosewal Yates. At that time, the appellant was advised of her *Miranda* rights.[4]

At trial, appellant testified in her own behalf. Although she acknowledged that Harris was her boyfriend and that she had seen him engage in narcotics transactions, appellant denied her own involvement in any transactions and specifically denied involvement in the offense charged. Tr. 58–59. On direct examination, defense counsel asked appellant whether, at the time of her arrest, she had made any statements to the police. Tr. 56. When she replied that she had, counsel asked to approach the bench. Tr. 57. The ensuing conference developed as follows:

THE COURT: Are you surprised?

[Counsel]: Very surprised.

THE COURT: Do you want to withdraw the question?

[Counsel]: I will withdraw the question.

*Id.* The trial judge knew that counsel was taken aback by appellant's response because, only moments earlier, counsel had informed the judge at the bench that her "testimony will be she made no statement at all." Tr. 56.

Although defense counsel asked no further questions of appellant concerning her statements to the police, the prosecutor returned to the subject on cross-examination. First, he asked whether she had told Detective Yates that she felt sorry for Harris because she had gotten him involved with narcotics in the first place. Tr. 63. She replied, "I don't remember making a statement like that." *Id.* Second, the prosecutor asked whether she had told Yates that her role in narcotics transactions was to hold the drugs for Harris while he negotiated with customers. She answered, "No." *Id.*

Defense counsel attempted on redirect examination to determine just what statements appellant did make to the police:

Q. Miss Powe, what did you say to the police when you talked to Detective Yates?

A. Well, they was asking me about, you know, what I had to do with narcotics and at the time I told them I was a drug user and Mr. Yates made propositions to me as far as turning over drug dealers up in that area over to him, to drop my case and Mr. Harris's case.

Tr. 64. Evidently, appellant used the plural pronoun "they" because Yates was accompanied during the interrogation by Officer Green. Tr. 79–80. It is not clear whether Green questioned appellant, or was simply present. In any event, defense counsel did not pursue the matter further during redirect.

In order to impeach appellant's testimony, the government then reopened its case and called Detective Yates, who had not testified initially. He indicated that at first appellant refused to talk at all, but began to do so after it was suggested that her cooperation might prove beneficial:

---

**2.** Green testified at trial that, although still working under cover, he was at the police station when Harris was brought in. Although he was concentrating on Harris, he noticed that two men and a woman came into the station and asked about Harris' case. He did not get a good look at the woman and did not realize until he saw her again at Harris' preliminary hearing that she was the woman who had handed him the pill. Tr. 19–20.

**3.** Green indicated that he was on the witness stand when he saw appellant seated at the back of the courtroom and realized that she was the woman with Harris. "[A]s I was testifying and I mentioned I met a Jane Doe and I looked at her, she got up and left . . . the courtroom." Tr. 19–20.

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Q. [by the prosecutor] Now, did Miss Powe at any time [after receiving *Miranda* warnings] indicate to you that she didn't want to talk to you?

A. At that time, no, she did not want to talk.

Q. Now, did there come a time subsequent to that that you did talk to her?

A. Yes.

Q. Could you describe the circumstances of that conversation, sir?

A. During the conversation, asking her if she wanted to cooperate with the police on drug traffic at 4th and M Streets and during that conversation, I stated to her: You really don't want the other defendant Harris to fall for Harris [sic], get in trouble because of his activities and her statements were that: I am the one feeling sorry for him because I introduced him into drug trafficking.

Q. And at the time you were engaging in this conversation, did she indicate a willingness to talk to you, sir?

A. Yes, she did.

Q. Did your conversation include anything else, sir?

A. Well, she stated that she held the drugs while Harris did the selling.

Q. And what was the context that that particular statement was given to you in?

A. It was broken off back and forth during a conversation.

 • • • •

Tr. 71–72.

At the conclusion of Yates' direct testimony, the trial judge responded *sua sponte* by instructing the jury that the government's evidence of appellant's admissions could be considered for purposes of impeachment only. Tr. 75–76. He indicated that the basis for this instruction was "the Harris case," Tr. 75, evidently referring to *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

Finally, defense counsel sought to clarify the circumstances of the interrogation in his cross-examination of Detective Yates:

Q. Detective, you testified that originally Miss Powe stated that she did not want to talk to you?

A. That is correct.

Q. What did she say to you?

A. That was after giving her the rights. I asked her where she lived and stuff like that and mentioned where she wanted to go and what she wanted to do. At the beginning of the processing, she was quite hostile and she didn't want to speak to us about anything.

Q. How much time elapsed before she finally talked or spoke to you?

A. I would say about a half hour, hour or so, roughly a half an hour.

Q. Did you, during that half hour, did you leave her by herself?

A. No, this is during the processing.

Q. After that half hour, did you ask her again if she wanted to speak to you?

A. Yes, not just asked if she would, wanted to speak. I started talking to her about certain questions and everything else and during this time asked her if she wanted to cooperate and to assist herself in this case and help herself out.

Q. What did you mean by that?

A. Well, to cooperate with the police and help her to get other drug traffickers in the city, assist herself to work off the case if need be.

Q. Was it at this time that she made these statements to you?

A. Shortly after, yes. She started talking. I started talking and she started giving information, certain information of elements about the city and things like that.

 • • • • •

Tr. 76–77.

## II

██ It is by now too well-established to require extensive discussion that a conviction based, in whole or in part, upon an involuntary confession deprives the defendant of due process.[5] In order to protect this

---

**5.** *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *accord, Blackburn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); *Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936).

"jealously guarded constitutional principle,"[6] the Supreme Court in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), established a procedure to ensure that the defendant would have "a fair hearing and a reliable determination on the issue of voluntariness."[7] Not only must the trial judge determine that a confession was freely and voluntarily given before allowing a jury to hear it, but the trial judge's "conclusion that the confession is voluntary must appear from the record with unmistakable clarity." *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967).

■ Ordinarily, the issue of voluntariness will be raised by the defense, either by pretrial motion to suppress[8] or by objection at trial.[9] When an objection is lodged, the hearing requirements mandated by *Jackson v. Denno* are triggered, and a hearing must be held out of the presence of the jury to determine whether the confession is admissible. The question presented by this unusual case is whether, and under what circumstances, the trial judge has a responsibility *sua sponte* to raise the issue of voluntariness and to hold the hearing prescribed by *Jackson v. Denno.*

## A

■ We start our analysis with the fundamental proposition that conviction of a defendant based upon a confession that is conceded to be involuntary would offend due process, whether or not the defendant strictly adhered to all of the procedural requirements of the trial court.[10] The Supreme Court has enumerated several of the "complex of values" underlying the stricture against the use of involuntary confessions.[11] Of primary concern is the interest

---

Constitutional prohibition against the use of involuntary confessions derives not only from the Due Process Clause of the Fifth and, in state proceedings, the Fourteenth Amendments, but from the Self-Incrimination Clause of the Fifth Amendment. *See, e. g., Malloy v. Hogan,* 378 U.S. 1, 6–9, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Burdeau v. McDowell,* 256 U.S. 465, 474–75, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). Although the former is directed generally against fundamentally unfair trials and the latter specifically toward compelled testimonial disclosure, a defendant raising the issue of an involuntary confession is free to call upon either right in support of a challenge to the admissibility of the confession. *See United States v. Bernett,* 161 U.S.App.D.C. 363, 495 F.2d 943, 950 n.37 (1974) (opinion of Robinson, J.).

**6.** *Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 348, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963).

**7.** 378 U.S. at 376–77, 84 S.Ct. at 1781. In 1968, Congress codified the hearing requirement in the Omnibus Crime Control and Safe Streets Act, Pub.L. No. 90–351, title II, § 701(a), 82 Stat. 210:

In any criminal prosecution brought by the United States or by the District of Columbia, a confession . . . shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness.

18 U.S.C. § 3501(a) (Supp. VI 1976).

**8.** Fed.R.Crim.P. 12(b)(3).

**9.** Fed.R.Crim.P. 12(f).

**10.** In *Brown v. Mississippi,* for example, the Supreme Court reversed three state convictions based upon admittedly coerced confessions on due process grounds. The Court rejected the State's contention that failure of defense counsel to move for exclusion of the confessions after they had been introduced and the fact of coercion had been proved precluded the Supreme Court from entertaining petitioners' claims: "The conviction and sentence were void for want of the essential elements of due process, and the proceeding thus vitiated could be challenged in any appropriate manner." 297 U.S. 278, 287, 56 S.Ct. 461, 465, 80 L.Ed. 682 (1936).

In *Jackson v. Denno, supra,* counsel also failed to make a proper objection to the admission of the defendant's alleged involuntary statements. 378 U.S. at 374, 84 S.Ct. 1774. *See id.* at 423–24, 84 S.Ct. 1774, (Clark, J., dissenting). Yet the Court found that the defendant's due process right to be free of a conviction based upon a coerced confession was endangered by the failure to hold a hearing on the voluntariness issue, and the Court therefore reversed the state court conviction. *Id.* at 376–77, 87 S.Ct. 1774.

**11.** Technically, appellant's alleged statements would be considered "admissions" rather than a confession because they do not amount to an acknowledgment that she committed the of-

in ensuring the trustworthiness of evidence. As the Court has recognized, coerced statements are inherently suspect, and the methods of coercion are not limited to acts of physical brutality.[12] As long ago as 1897, the Supreme Court announced that a confession shall be deemed involuntary if it was "extracted by any sort of threats or violence [o]r obtained by any direct or implied promises, however slight, [o]r by the exertion of any improper influence." [13]

■ However, the Court has also made it clear that the reliability of evidence is not the only concern. Due process forbids the use of an involuntary confession without regard for its truth or falsity,[14] and even if there is ample evidence aside from the confession to support a verdict: [15]

> As important as it is that persons who have committed crimes be convicted, there are considerations which transcend the question of guilt or innocence. Thus,

in cases involving involuntary confessions, this Court enforces the strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will. *Blackburn v. Alabama,* 361 U.S. 199, 206–207, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960).

One of the considerations consistently cited in decisions of the Supreme Court is the interest in preserving the individual's "freedom of will." [16] Although various formulations have been given to this concept,[17] this court has explained that the phrase embraces the principle that "[t]he make-up of a free man includes his mechanisms for self-preservation, to refrain from speech that may endanger him. . . . But his statement does not reflect his own free will or intellect if his statement is attributable in critical measure to the fact that his self-

fense charged. With respect to the rules governing the admissibility of involuntary statements, however, this distinction has no constitutional significance. *Iverson v. North Dakota,* 480 F.2d 414 (8th Cir.), *cert. denied,* 414 U.S. 1044, 94 S.Ct. 549, 38 L.Ed.2d 335 (1973); *United States v. Marcey,* 142 U.S.App.D.C. 253, 440 F.2d 281, 284 (1971); *Jones v. United States,* 111 U.S.App.D.C. 276, 280, 296 F.2d 398, 402 (1961), *cert. denied,* 370 U.S. 913, 82 S.Ct. 1260, 8 L.Ed. 406 (1962). *See also Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Gladden v. Unsworth,* 396 F.2d 373, 375–376 (9th Cir. 1968). Also the federal statute that now applies to the admissibility of confessions speaks in terms of "any self-incriminating statement." Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, tit. II, § 701(a), 82 Stat. 210, 18 U.S.C. § 3501 (1976).

**12.** "Since *Chambers v. State of Florida,* 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716, this Court has recognized that coercion can be mental as well as physical, and that the blood of the accused is not the only hallmark of an unconstitutional inquisition." *Blackburn v. Alabama,* 361 U.S. 199, 206, 80 S.Ct. 274, 279, 4 L.Ed.2d 242 (1960). *See also Ziang Sung Wan v. U. S.,* 266 U.S. 1, 45 S.Ct. 1, 69 L.Ed.2d 131 (1924).

**13.** *Bram v. United States,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897). *Accord, United States v. Bernett,* 161 U.S.App.D.C. 363, 386, 495 F.2d 943, 966 (1974); *Hunter v. Swenson,* 372 F.Supp. 287 (W.D.Mo.), *aff'd, United States v. Springer,* 460 F.2d 1344 (7th Cir.), *cert. denied,* 409 U.S. 873, 93 L.Ed. 205, 34

L.Ed.2d 125 (1972); *Bell v. State of Alabama,* 367 F.2d 243 (5th Cir. 1966), *cert. denied,* 386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788 (1967); *Harris v. Beto,* 367 F.2d 567 (5th Cir. 1966); *Jackson v. United States,* 119 U.S.App.D.C. 100, 337 F.2d 136 (1964), *cert. denied,* 380 U.S. 935, 85 S.Ct. 944, 13 L.Ed.2d 822 (1965).

**14.** *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961).

**15.** *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958); *Stroble v. California,* 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872 (1952); *Malinski v. New York,* 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029 (1945).

**16.** *Blackburn v. Alabama,* 361 U.S. 199, 207, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960).

**17.** *See, e. g., Greenwald v. Wisconsin,* 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77 (1968) (confession must be the "product of his free and rational choice"); *Haynes v. Washington,* 373 U.S. 503, 514, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513 (1963) ("product of a free and unconstrained will"); *Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963) ("product of a rational intellect and a free will"); *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961) ("freely self-determined"); *Watts v. Indiana,* 338 U.S. 49, 53, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949) ("expression of free choice"); *Ashcraft v. Tennessee,* 322 U.S. 143, 154, 64 S.Ct. 921, 88 L.Ed. 1192 (1944) ("mental freedom").

protective mechanism is negated or overridden by external force or fraud, a condition of insanity, the compulsion of drugs." [18]

Yet another interest served by the exclusion of involuntary confessions is the deterrence of questionable police conduct.[19] "The abhorrence of society to the use of involuntary confessions . . . also turns on the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves." [20] Finally, the proscription against the use of involuntary confessions reflects the basic societal conviction that the very integrity of the criminal justice system is compromised when it operates to take advantage of a person whose volitional capacity is seriously impaired.[21]

Indeed, the right not to offer testimony against oneself except by "free and rational choice" is so firmly rooted in our notion of fundamental fairness that the Constitution does not countenance the use of an involuntary confession or admission by the accused for any purpose in a criminal trial. "[A]ny criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law, 'even though there is ample evidence aside from the confession to support the conviction.' " *Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978).[22]

It is true that the accused's right not to have an involuntary confession offered against him at trial may be waived. But the Supreme Court has always set high standards of proof for the waiver of constitutional rights. The requirement of "an intentional relinquishment or abandonment of a known right or privilege" was first articulated in a case involving the validity of a defendant's decision to waive the right to counsel. *Johnson v. Zerbst,* 304 U.S. 458,

---

**18.** *Pea v. United States,* 130 U.S.App.D.C. 66, 73, 397 F.2d 627, 634 (1967).

**19.** The objectionable police practices need not, of course, rise to the level of illegality to justify their discouragement. As the Supreme Court explained, referring to the confession excluded in *Bram*:

> *Bram* dealt with a confession given by a defendant in custody, alone and unrepresented by counsel. In such circumstances, even a mild promise of leniency was deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess.

*Brady v. United States,* 397 U.S. 742, 754, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1970).

**20.** *Spano v. New York,* 360 U.S. 315, 320–21, 79 S.Ct. 1202, 1206, 3 L.Ed.2d 1265 (1959). *See Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928).

**21.** *Blackburn v. United States,* 361 U.S. 199, 207, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); *United States v. Bernett,* 495 F.2d 943, 952, 161 U.S. App.D.C. 363, 372 (1974). *Cf.* Schaefer, *Federalism and State Criminal Procedure,* 70 Harv.L. Rev. 1, 26 (1956) ("The quality of a nation's civilization can be largely measured by the methods it uses in the enforcement of its criminal law.")

**22.** The Supreme Court's decision in *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), does not undercut these fundamental principles. *Harris* established that a *Miranda* violation, without more, does not preclude introduction of an admission of guilt by the accused for purposes of impeaching her testimony at trial. The Court was careful to emphasize that "[p]etitioner makes no claim that the statements made to the police were coerced or involuntary." *Id.* at 224, 91 S.Ct. at 645. *Harris* thus does not govern a case where it appears that any statements made by the accused may have been induced by promises of leniency. Every circuit court to have addressed the question has found that *Harris* has nothing to say about the admissibility of involuntary confessions, and has held that such confessions are not admissible for purposes of impeachment. *LaFrance v. Bohlinger,* 499 F.2d 29 (1st Cir.), *cert. denied,* 419 U.S. 1080, 95 S.Ct. 669, 42 L.Ed.2d 674 (1974); *Iverson v. North Dakota,* 480 F.2d 414 (8th Cir.), *cert. denied,* 414 U.S. 1044, 94 S.Ct. 549, 38 L.Ed.2d 335 (1973); *Alesi v. Craven,* 440 F.2d 975, 978 (9th Cir.), *cert. denied,* 404 U.S. 856, 92 S.Ct. 103, 30 L.Ed.2d 97 (1971); *United States v. Salinas,* 439 F.2d 376 (5th Cir. 1971). *See also Oregon v. Hass,* 420 U.S. 714, 722, 95 S.Ct. 1215, 1221, 43 L.Ed.2d 570 (1975) (statements by accused admissible for impeachment purposes because, as in *Harris, Miranda* principles were violated; but "[t]here is no evidence or suggestion that Hass' statements . . . were involuntary or coerced").

464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Since then, the requirement of a knowing and intelligent waiver has been applied to other rights constitutionally guaranteed to a criminal defendant to protect a fair trial and the reliability of the truth-determining process.[23] Of particular relevance to this case, the *Johnson* criteria have been applied to test the effectiveness of a guilty plea [24]—which itself incorporates waivers of the privilege against compulsory self-incrimination [25] and the right to contest the admissibility of any evidence the State might have offered against the defendant [26] and waiver of the privilege against self-incrimination during custodial interrogation.[27] These safeguards demonstrate, in analogous contexts, the caution with which inculpatory pronouncements must be received and the scrutiny which the trial court must exercise before permitting a defendant in a criminal case to relinquish the basic rights indispensable to a fair trial.

## B.

 Of course, our adversary system places primary reliance on the defendant and defense counsel to raise the issue of the voluntariness of a confession. Ordinarily, it is the defendant who is most familiar with the circumstances surrounding any statements she may have given, and it is the defense counsel who, through investigation and familiarity with the relevant legal doctrines, is best prepared to realize whether the question of voluntariness is raised by the events that transpired.[28] Moreover, it is conceivable that defense counsel may for tactical reasons waive a valid objection to introduction of the defendant's statements.[29] The trial judge typically does not play an inquisitorial role in our legal system, and is limited to consideration of the testimony presented in open court in discovering how a confession was obtained. Thus, unless the voluntariness question is brought to the attention of the trial court, the trial judge generally is not required to raise the issue *sua sponte,* and a *Jackson v. Denno* hearing is not constitutionally mandated.[30]

 It has been recognized, however, that certain "alerting circumstances" may impose a duty on the trial judge to take a

23. A strict standard of waiver has been applied to those rights guaranteed to a criminal defendant to insure that he will be accorded the greatest possible opportunity to utilize every facet of the constitutional model of a fair criminal trial. Any trial conducted in derogation of that model leaves open the possibility that the trial reached an unfair result precisely because all the protections specified in the Constitution were not provided. *Schneckloth v. Bustamonte,* 412 U.S. 218, 241, 93 S.Ct. 2041, 2055, 36 L.Ed.2d 854 (1973).

24. *E. g., McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *McCarthy v. United States,* 394 U.S. 459, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1969). *See* Fed.R.Crim.P. 11(c) & (d).

25. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

26. *McMann v. Richardson,* 397 U.S. 759, 766, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

27. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

28. Defense counsel is aided in this task by the modern discovery rules, which, upon request, permit a defendant to inspect and copy any "relevant written or recorded statements made by the defendant . . . within the possession, custody or control of the government, . . . the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant . . . in response to interrogation by any . . . government agent, . . . and recorded testimony of the defendant before a grand jury . . . ." Fed.R.Crim.P. 16(a)(1)(A).

29. If, for example, defendant's statements at the time of arrest are thought to be more exculpatory than incriminating, the defense may deliberately choose not to object, even though the statements may have been coerced. *Cf. Wainwright v. Sykes,* 433 U.S. 72, 96–97, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (Stevens, J., concurring).

30. *Wainwright v. Sykes, supra,* 433 U.S. 72, 86, 97 S.Ct. 2497, 53 L.Ed.2d 794 (1977). *See, e. g., United States ex rel. Lewis v. Pate,* 445 F.2d 506 (7th Cir. 1971); *United States v. Monroe,* 141 U.S.App.D.C. 251, 253, 437 F.2d 684, 686 (1970) (per curiam); *La Brasca v. Misterly,* 423 F.2d 708, 709–710 (9th Cir.), *cert. denied,* 400 U.S. 838, 91 S.Ct. 77, 27 L.Ed.2d 72 (1970); *Sellers v. Smith,* 412 F.2d 1002, 1005 (5th Cir. 1969); *Lundberg v. Buchkoe,* 389 F.2d 154, 156–157 (6th Cir. 1968); *Woody v. United States,* 126 U.S.App.D.C. 353, 379 F.2d 130

more active role in the trial process and to investigate the need for a hearing on the voluntariness of a confession.[31] As this court has previously emphasized, "[t]he judge . . . is not a passive by-stander in the arena of justice, a spectator at a 'sporting event;'"[32] rather, when it appears clearly during the course of a trial that there is doubt as to the voluntariness of a confession, the trial judge may be required to conduct an inquiry on that issue despite failure of defense counsel to offer an objection.[33] This procedure safeguards the accused's due process right to be free of

(1967). *But see* n. 49, *infra*, and cases cited therein.

**31.** "Certain alerting circumstances, such as a defendant's apparent abnormal mental or physical condition, obvious ignorance, or lack of awareness—all of which may reveal a dereliction in defense counsel's failure to object to the introduction of a confession—may, under due process standards, require a trial judge to investigate the necessity of conducting a hearing notwithstanding the absence of an objection." *United States v. Taylor,* 374 F.2d 753, 756 (7th Cir. 1967).

In several cases, courts have held that evidence of involuntariness adduced at trial should have "alerted" the trial judge to the need for such an inquiry in the absence of defense objection. In *LaFrance v. Bohlinger,* 499 F.2d 29 (1st Cir.), *cert. denied,* 419 U.S. 1080, 95 S.Ct. 669, 42 L.Ed.2d 674 (1974), for example, a habeas case, evidence of "police threats and other blatant forms of physical and mental duress" was found sufficiently "glaring" to have imposed a duty to inquire on the state trial judge. 499 F.2d at 35–36. And in *United States ex rel. Gainer v. New Jersey,* 278 F.Supp. 127 (D.N.J.1967), the court found that when the defendant testified in his own behalf that an incriminating statement allegedly made by him was not his voluntary statement, the trial judge should have conducted an inquiry into the voluntariness of the confession, even though defense counsel stated affirmatively that there was no objection to its introduction into evidence. *See also Grieco v. United States,* 435 F.2d 677, 678 (7th Cir. 1970) (no "indicia of involuntariness available to flag the issue") (dictum), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1251, 28 L.Ed.2d 544 (1971); *Jacobsen v. California,* 431 F.2d 1017, 1019 (9th Cir. 1970) (hearing required "where there is present in the record evidence tending to show such involuntariness") (dictum).

In other situations, evidence of the defendant's mental or emotional condition raised the risk that the confession was involuntary and required a hearing to be held despite the failure to object to its admissibility. Such a risk was found too great to ignore in *Hizel v. Sigler,* 430 F.2d 1398, 1401 (8th Cir. 1970), a habeas case, where "the evidence adduced at trial indicated that the petitioner (1) suffers from chronic brain damage brought on by alcoholism, (2) is unable to read and can write only his last name, (3) has a mental age of eight to twelve years, (4) has a hearing impairment, (5) was under the influence of alcohol when interrogated, and (6) was not warned of his right to counsel or of his right to remain silent before being interrogated." (Note that *Miranda* was inapplicable because the trial occurred before *Miranda* was decided. *See Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966)). *See also Gerberding v. United States,* 471 F.2d 55, 61 (8th Cir. 1973) ("special circumstances") (dictum); *United States ex rel. Lewis v. Pate,* 445 F.2d 506, 508 (7th Cir. 1971) ("alerting circumstances") (dictum); *United States v. Silva,* 418 F.2d 328 (2d Cir. 1969).

**32.** *United States v. McCord,* 166 U.S.App.D.C. 1, 14, 509 F.2d 334, 347 (1974) (en banc), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 7 (1975). *See Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933) ("In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law.").

**33.** Both this court and those of other circuits have vacated convictions and ordered new trials or have remanded cases for hearings on voluntariness even though there had been no objections made on that ground at any point during trial. *See, e. g. Proctor v. Anderson,* 124 U.S.App.D.C. 103, 361 F.2d 557 (1966) (per curiam); *Curtis v. United States,* 121 U.S.App. D.C. 283, 349 F.2d 718 (1965) (per curiam); *Hizel v. Sigler,* 430 F.2d 1398, 1400–01 (8th Cir. 1970); *Mullins v. United States,* 382 F.2d 258 (4th Cir. 1967); *Black v. Beto,* 382 F.2d 758 (5th Cir. 1967); *State of Minnesota ex rel. Holscher v. Tahash,* 364 F.2d 922, 927 (8th Cir. 1966) (opinion of then-Judge Blackmun); *Mitchell v. Stephens,* 353 F.2d 129 (8th Cir. 1965); *LaFrance v. Bohlinger,* 365 F.Supp. 198, 208 (D.Mass.1973), *aff'd,* 499 F.2d 29 (1st Cir.), *cert. denied,* 419 U.S. 1080, 95 S.Ct. 669, 42 L.Ed.2d 674 (1974); *United States ex rel. Gaines v. New Jersey,* 278 F.Supp. 127 (D.N.J. 1967); *Homan v. Sigler,* 278 F.Supp. 201 (D.Neb.1967). *See also Barnes v. State,* 204 Kan. 344, 461 P.2d 782 (1969); *People v. Ubbes,* 374 Mich. 571, 132 N.W.2d 669 (1965). And in *Jackson v. Denno* itself, the Supreme Court remanded for a hearing on voluntariness although no specific objection on that issue was lodged, 378 U.S. at 374, 84 S.Ct. 1774. *See* n. 10, *supra.*

a conviction based upon an involuntary confession and is consistent with the requirement in similar contexts of a knowing and intelligent waiver of fundamental rights. Indeed, at least one circuit has established a procedure that requires the trial judge to hold a hearing on the voluntariness issue *whenever* a confession is proffered by the Government, and even though there be no objection from defense counsel.[34] We need not go so far, however, for we hold only that in the circumstances of this case, a substantial question of voluntariness was raised and the trial judge should have conducted further inquiry on that issue.

## III

▬▬▬ Ironically, most of the evidence supporting appellant's contention that she was induced to incriminate herself against her will comes from the mouths of the government's own witnesses. Detective Yates, one of the officers who conducted the interrogation, testified that after being advised of her rights, appellant refused to talk to the police.[35] Approximately one-

---

**34.** "To assure the accused complete protection, the procedure should substantially be this. On proffer of the confession, *even though there be no objection,* the court should let the jury withdraw, and then take evidence upon the confession and its factual setting. . . . The court will thereupon independently determine whether the confession is admissible." *United States v. Inman,* 352 F.2d 954, 956 (4th Cir. 1965) (emphasis added). The *Inman* procedure also requires that the trial judge, if satisfied beyond a reasonable doubt of the confession's voluntariness, make and include in the record an explicit finding to that effect. *Id.* In *Mullins v. United States,* 382 F.2d 258 (4th Cir. 1967), the court reaffirmed the procedure mandated in *Inman* and emphasized that it was to be followed even though defense counsel failed to object to the confession. *Id.* at 261. The *Mullins* court stated that an independent hearing was "commanded by the clear and explicit holding in *Inman,*" *id.* at 262, and explained that the government's attempt to distinguish that case "ignores the clear teaching of this court in *Inman.*" *Id.*

In *Woody v. United States,* 126 U.S.App.D.C. 353, 379 F.2d 130 (1967), a panel of this court declined to follow what it labelled "the dictum in *Inman,*" *id.* 126 U.S.App.D.C. at 354, 379 F.2d at 131, primarily on the ground that the appellant had testified at trial that he had never made any statements. The court felt that it was virtually inevitable that the defendant would take an inconsistent position in any hearing on the issue of voluntariness, testifying that he had indeed made incriminating statements, but that these utterances were coerced. Because his previous testimony denying the existence of any statements could be offered to impeach him, the court felt that a remand would prove futile. For similar reasons, the court felt that it could not approve of any procedure that would allow the accused to testify that his statements were involuntary "out of the jury's hearing at 9:30" and then claim that he made no statements "at 11:00 a. m., when the jury is recalled." *Id.* 126 U.S.App. D.C. at 355, 379 F.2d at 132.

However, as the dissent in *Woody* noted, the defendant need not always testify at the nonjury hearing on voluntariness. In fact, the present case presents the possibility that the defendant would not have to testify in order to make out a case of involuntariness, an occurrence which the majority in *Woody* found "almost impossible to conceive of." *Id.* 126 U.S. App.D.C. 354 n. 2, 379 F.2d at 131 n. 2. Moreover, any defendant could always testify at the hearing to the circumstances surrounding the making of an alleged statement while at the same time denying the specific content of any such statement. And in the present case, the defendant has acknowledged having a conversation with the police. On remand, she could be questioned about what statements she did make and the circumstances surrounding them. The trial judge, in any event, could find that any admissions she did make—or might have made—were induced by offers of leniency and thus improperly introduced into evidence. Finally, because the government always bears the burden of establishing that any statements it seeks to introduce were made voluntarily, the Supreme Court has held that a defendant is entitled as a matter of due process to claim that a confession was involuntary even while denying under oath that he made it. *Lee v. Mississippi,* 332 U.S. 742, 745–46, 68 S.Ct. 300, 92 L.Ed. 330 (1948). *See also Boles v. Stevenson,* 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed. 109 (1964).

**35.** "At the beginning of the processing, she was quite hostile and she didn't want to speak to us about anything." Tr. 76.

We have no need to decide whether the continued interrogation of appellant after she voiced her desire not to answer any questions constituted a *Miranda* violation. *See Miranda v. Arizona,* 384 U.S. 436, 473–74, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.") We note, however, that this evidence of continued questioning may have been the

half hour to an hour later, while appellant, who had never previously been arrested, was still in custody and had yet to consult an attorney, Detective Yates asked Ms. Powe if she wanted to "cooperate and assist herself in this case and help herself out."[36] It was only in response to these questions that appellant started talking to the officers and made the alleged admissions.[37] This undisputed account of the interrogation, offered by the government's own witness,[38] squarely raised the issue of voluntariness and should have alerted the trial judge to the possibility that appellant's alleged incriminations were induced by "any direct or implied promises, however slight."[39]

Moreover, the trial judge's vigilance should have been heightened by the odd turn-of-events that transpired and defense counsel's apparent unpreparedness and inability to deal effectively with the problems posed by appellant's alleged admissions.[40] First, counsel apparently was unaware that his client had even made any statements to the police. Immediately after defense counsel had assured the court that his client would say that "she made no statement at all,"[41] appellant testified that she had in-

---

motivation for the trial court's *sua sponte* limiting instruction. *See* n. 42 *infra.*

**36.** Tr. 77. Ms. Powe's testimony describes the offers of leniency somewhat more explicitly: "Mr. Yates made propositions to me as far as turning over drug dealers up in that area over to him, to drop my case and Mr. Harris' case." Tr. 64.

The government contends that appellant's statements were not involuntary because the police sought her help in incriminating others, not herself. To begin with, the government offers an exceedingly narrow concept of "incrimination." The Fifth Amendment privilege operates where the information sought to be extracted presents "a realistic threat of incrimination," *Fisher v. United States,* 425 U.S. 391, 412, 96 S.Ct. 1569, 48 L.Ed. 39 (1976), as distinguished from "a mere imaginary possibility," *Mason v. United States,* 244 U.S. 362, 366, 37 S.Ct. 621, 61 L.Ed. 1148 (1917). *See also Grosso v. United States,* 390 U.S. 62, 65–67, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); *Haynes v. United States,* 390 U.S. 85, 95–97, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); *Heike v. United States,* 227 U.S. 131, 144, 33 S.Ct. 226, 57 L.Ed. 450 (1913). The threat is sufficiently realistic where the information "would furnish a link in the chain of evidence needed to prosecute the claimant [of the privilege] for a . . . crime," *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951), or if the information would supply "an 'investigatory lead', [or produce] . . . evidence . . . by focusing investigation on a witness as a result of his compelled disclosures." *Kastigar v. United States,* 406 U.S. 441, 460, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972). Thus, even assuming that Detective Yates explicitly asked appellant only for her knowledge about Harris' or others' drug dealings, the information which such a question would elicit could reasonably be foreseen to incriminate—and, according to Yates, did so incriminate—appellant of complicity in the very crime for which she was ultimately indicted. The government thus mis-

takes the formal cast of Yates' question for what it may in fact have been designed to elicit. *See Crawford v. United States,* 219 F.2d 207 (5th Cir. 1955) (statements involuntary where induced by offer of "bargain" in which defendant would incriminate others).

Moreover, we cannot say from this record that the officers did not, in fact ask appellant about her own involvement with narcotics. In fact, somewhere in the conversation that was "broken off back and forth," tr. 71, appellant allegedly provided information about her own drug usage and involvement in narcotics transactions. We thus must reject the government's argument that the record unambiguously establishes that Yates did not ask appellant about her own involvement and that her statements resulted from something other than the inducements offered to her.

**37.** Tr. 77.

**38.** The testimony of Officer Green, who was with Detective Yates at the time appellant was questioned, confirms that Detective Yates suggested that appellant might "work" her case off. Tr. 79.

**39.** *Bram v. United States,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed.2d 568 (1897).

**40.** We note, in contrast, that the prosecutor was quite well prepared to handle appellant's alleged admissions. Although no mention was made of appellant's statements in the prosecution's case-in-chief, perhaps because of doubts as to whether they could withstand a *Miranda* challenge, see note 35, *supra,* the prosecutor had Detective Yates ready to testify in rebuttal to Ms. Powe's testimony.

**41.** In what is yet another odd occurrence in this unusual case, counsel's affirmation to the court that appellant would claim to have said nothing to the police was provoked by the *prosecutor's* objection to defense counsel's asking the witness whether she made any statements. Tr. 56–57.

deed made a statement. Tr. 56–57. Despite expressing his "surprise" at this development, defense counsel did not confer with his client and barely paused before continuing to question the appellant. Furthermore, defense counsel failed to take even a brief recess in order to examine the legal principles governing the admissibility of appellant's incriminating statements and to consider what changes in trial preparation and strategy might be necessitated by the sudden developments. Consequently, although the testimony of Detective Yates raised serious questions about the means by which appellant's admissions were obtained, defense counsel lodged no objection to their introduction, and the trial judge *sua sponte* instructed the jury that the government's evidence of the alleged statements could be considered only on the issue of appellant's credibility.[42]

## IV

We cannot and do not mean to lay the entire responsibility for failure to inquire into the question of voluntariness at the feet of the trial judge.[43] Defense counsel, by failing to adequately raise the issue in the first instance, certainly fell short in his responsibility to safeguard his client's interests.[44] Likewise, appellant herself cannot be held entirely blameless.[45] But even in an adversary system in which "the vast array of trial decisions . . . rests with the accused and his attorney," [46] the trial court can no more stand idly by while the fundamental rights of a criminal defendant are forfeited through the inaction of ill-pre-

42. Tr. 75–76. The trial judge did not indicate the basis for his concern over the officer's testimony, but there are at least three explanations for his ruling. First, he may have found that the admissions were in fact involuntary, but erroneously thought them admissible for impeachment purposes under *Harris. See* note 22, *supra.* Alternatively, he may have found that the admissions were obtained through a violation of *Miranda* principles, see note 35 *supra,* and thought that no further inquiry into voluntariness was required. Finally, he may have found that *Miranda* was violated, but that the statements were voluntary. If so, however, he should have indicated the latter finding on the record with "unmistakable clarity." *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967).

43. Indeed, the trial judge, by *sua sponte* instructing the jurors on the limited consideration which they could give to Detective Yates' testimony, assumed a greater role than that of the "passive bystander."

44. There is absolutely no indication in the record, nor has it been suggested by either party, that defense counsel's failure to object to the admissibility of appellant's statements was a deliberate tactical decision.

At oral argument, appellate counsel originally speculated that trial counsel's failure to object might have been due to counsel's unpreparedness on this point, appellant having told him that she had made no statements. After reviewing his notes subsequent to oral argument, appellate counsel "recalled that he had been told by trial counsel that he [trial counsel] was aware the Government would introduce statements, but that his client told him there were no statements and that trial counsel's preparation was based on that assumption." Appellant's Motion to Amend Record of Oral Argument. If appellate counsel's recollections are indeed correct, then by relying solely on whatever appellant told him and failing to conduct any independent investigation of the circumstances of the interrogation by interviewing the officers who conducted it, trial counsel appears to have breached one of the basic duties owed to a client. *See United States v. Decoster (Decoster I),* 159 U.S.App.D.C. 326, 333, 487 F.2d 1197, 1204 (1973) ("Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed.").

45. Appellant's apparent failure to inform defense counsel of her conversation with Detective Yates certainly contributed to his failure to object at trial, although it did not preclude him from acting to correct the situation during the course of the trial.

46. *Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976). Of course, our adversary system is founded on the presupposition that attorneys will function competently. When doubts are raised about the lawyer's performance in safeguarding his client's rights, we must be careful not to defer to sheer inadvertence under the guise of maintaining "our adversary system." Particularly when the indigent defendant has little or no choice in selecting his representative at trial, "no fictional relationship of principal-agent or the like can justify holding the criminal defendant accountable for the naked errors of his attorney." *Wainwright v. Sykes,* 433 U.S. 72, 114, 97 S.Ct. 2497, 2520, 53 L.Ed.2d 594 (1977) (Brennan, J., dissenting).

pared counsel than a reviewing court can fail to notice plain errors or defects affecting these substantial rights.[47] When, as here, the trial court is plainly alerted to the potential danger that the defendant's statements were obtained in violation of the Constitution, the judge ought to bear the responsibility for conducting further inquiry on that issue. *Jackson v. Denno* itself holds that a fair hearing and a reliable determination on the issue of voluntariness are constitutionally mandated where the trial court has indicated its awareness that the voluntariness issue has been raised, but no specific objection has been lodged by defense counsel.[48] And it may be that a hearing and determination is also required *as a constitutional matter* in cases where, as here, the indicia of involuntariness in the record are sufficiently compelling to alert the trial court to the problem.[49] In any event, however, it is not necessary for us to decide this constitutional question, for we have often stressed that the trial judge bears a continuing and "most pressing affirmative responsibility to see that justice is done in every case."[50] And, in supervising the administration of justice in the federal courts, we, too, have an obligation to protect the rights of the accused and to preserve the orderly functioning of trial courts. It is now axiomatic that a defendant would be deprived of due process of law if his conviction were founded, in whole or in

---

47. *Cf.* Fed.R.Crim.P. 52(b). ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

48. *Jackson v. Denno,* 378 U.S. 368, 374, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). *See* note 10 *supra.*

49. *See, e. g., LaFrance v. Bohlinger,* 499 F.2d 29 (1st Cir.), *cert. denied,* 419 U.S. 1080, 95 S.Ct. 669, 42 L.Ed.2d 674 (1974); *Hizel v. Sigler,* 430 F.2d 1398, 1401 (8th Cir. 1970); *United States ex rel. Gainer v. New Jersey,* 278 F.Supp. 127 (D.N.J.1967). *See also* cases cited in notes 31 & 33, *supra.*

Most of the cases in which voluntariness hearings were ordered despite the failure of defense counsel to object to the confession's admissibility arose on habeas corpus or § 2255 review. We note that, in contrast to the scope of collateral review, which is limited to entertaining claims of violations of constitutional rights, a court on direct review may notice "plain errors or defects affecting substantial rights" even though "they were not brought to the attention of the court." Fed.R.Crim.P. 52(b). We have interpreted Supreme Court precedent concerning this rule to establish that "the doctrine of plain error encompasses those errors which are obvious, affect the substantial rights of the accused and if uncorrected would be an affront to the integrity and reputation of judicial proceedings." *United States v. McCord,* 166 U.S.App.D.C. 1, 8, 509 F.2d 334, 341 n. 10 (1974) (en banc), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 7 (1975). *See generally, Silber v. United States,* 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962); *Johnson v. United States,* 318 U.S. 189, 199–201, 63 S.Ct. 509, 87 L.Ed. 704 (1943); *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936). The record in the instant case contains enough evidence to raise the question whether admission of the appellant's statements affected substantial rights of the accused, but without further evidentiary hearings, it cannot provide an answer.

Although courts generally invoke Rule 52(b) to reverse a criminal conviction, *see e. g., United States v. Alston,* 179 U.S.App.D.C. 129, 551 F.2d 315 (1976); *United States v. McClain,* 142 U.S.App.D.C. 213, 440 F.2d 241 (1971); *King v. United States,* 125 U.S.App.D.C. 318, 372 F.2d 383 (1967), it has been recognized that the rule also authorizes remand to the district court for further proceedings where reversal would be premature. *See, e. g., United States v. Valez,* 431 F.2d 622 (8th Cir. 1970) (remand under Rule 52(b) to determine whether questionable lineup procedures comported with constitutional standards); *Proctor ·v. United States,* 131 U.S.App.D.C. 241, 404 F.2d 819 (1968) (remand under Rule 52(b) to determine whether questionable waiver was obtained in accordance with *Miranda* principles); *Rivers v. United States,* 400 F.2d 935 (5th Cir. 1968) (remand under Rule 52(b) to determine whether questionable identification testimony conformed to constitutional standards). *See also Washington v. United States,* 134 U.S.App.D.C. 223, 226, 414 F.2d 1119, 1122 (1969); *Gray v. United States,* 114 U.S.App.D.C. 77, 311 F.2d 126, 127 (1962), *cert. denied,* 374 U.S. 838, 83 S.Ct. 1886, 10 L.Ed.2d 1057 (1963). And, of course, appellate courts have jurisdiction under 21 U.S.C. § 2106 to fashion whatever relief is just under the circumstances.

50. *United States v. McCord,* 166 U.S.App.D.C. 1, 14, 509 F.2d 334, 347 (1974) (en banc), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975). *See generally,* A. Goldstein, *Reflections on Two Models: Inquisitorial Themes in American Criminal Procedure,* 26 Stan.L.Rev. 1009, 1022 (1974).

part, upon an involuntary confession.[51] Thus, as an exercise of the federal courts' "judicial authority to use their remedial mechanisms to redress or obviate such constitutional injuries,"[52] we remand to the district court for a hearing on the issue of the voluntariness of any of appellant's alleged statements.

By leaving this determination in the first instance to the trial court, we do not mean to avoid our responsibility to make an independent evaluation of the record.[53] The record in this case, however, is necessarily incomplete owing to the failure of the trial court to conduct inquiry outside the hearing of the jury on the issue of voluntariness. Although it would appear on this record that any statements appellant Powe made to Detective Yates were induced by offers of leniency, we are reluctant to reverse for a new trial until the government has an opportunity to prove the contrary. If, for example, the government were able to establish that Powe acknowledged her role in the drug transaction with Harris before Detective Yates suggested that her cooperation might prove beneficial, the claim of involuntariness might be overcome. Accordingly, we remand the record in this case to the district court for an evidentiary hearing and findings of fact on the voluntariness of appellant's purported statements.[54]

*So ordered.*

WILKEY, Circuit Judge, dissenting:

I must dissent from any remand to explore the nuances of the testimony brought out at the trial in this case. The time to explore the underlying matters, if such were needed, was at the trial, yet none of the participants therein felt that clarification was necessary. It is only on this appeal that possible ambiguities of constitutional dimension are perceived.

The Government's position on appeal is that appellant's statements were not involuntary because Officer Yates asked her to cooperate only by incriminating others, not by incriminating herself. In other words, the "confession," whose voluntariness is now to be determined on remand, was never asked for at all by the police; what they asked for and expected was information on other traffickers. The information as to her own guilt was volunteered by Powe, and unexpected by the officers. On the record, this is a reasonable interpretation now, as it was at the trial. If defense counsel thought otherwise, that these statements were involuntary, that they were coerced or extorted, or persuaded, and thus on the Supreme Court decisions relied on by my colleagues were "involuntary," he should have apprised the trial judge of that and conducted an inquiry outside of the jury to make his case. This not having been done, we are now entitled to take this evidence, as all other evidence subject to varying interpretation *post hoc,* on the version which supports the judgment of the trial court.

I do not subscribe to the interpretation that this record "squarely raised the issue of voluntariness and should have alerted the trial judge to the possibility that appellant's alleged incriminations were induced by 'any direct or implied promises, however slight.'" Of course there were offers and inducements, but the question is for what?

51. *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

52. *Sullivan v. Murphy,* 156 U.S.App.D.C. 2, 29, 478 F.2d 938, 965, *cert. denied,* 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973). *See United States v. Silva,* 418 F.2d 328, 331 (2d Cir. 1969).

53. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 2417, 57 L.Ed.2d 290 (1978); *Davis v. North Carolina,* 384 U.S. 737, 741–42, 86 S.Ct. 1761, 16 L.Ed.2d 89 (1965); *Haynes v. Washington,* 373 U.S. 503, 515–16, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1962).

54. *See, e. g., Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *United States v. Salinas,* 439 F.2d 376, 380 (5th Cir. 1971); *cf. Frazier v. United States,* 136 U.S. App.D.C. 180, 419 F.2d 1161, 1169 (1969), *appeal after remand,* 155 U.S.App.D.C. 135, 476 F.2d 891 (1973) (en banc); *Proctor v. United States,* 131 U.S.App.D.C. 241, 404 F.2d 819 (1968). *See generally* cases cited in note 33 *supra.*

The police wanted the accused's cooperation to land other and bigger traffickers; they had the goods on her, they needed no confession, she was only a one tablet case anyway. To put the matter most favorably for the accused, the record shows by hindsight that the evidence was susceptible to different interpretations. Being subject to different interpretations, the time to clarify the matter was right then at the trial, but apparently defense counsel did not take the interpretation now derived from the written record by my colleagues, nor did the trial judge.

While it is correct to impose upon the trial judge the duty to take *sua sponte* action where there is a plain violation of defendant's rights put before him, and the defense lawyer omits to take the proper action, it is a far different thing to impose upon the trial judge the duty *sua sponte* to conduct inquiries into other matters which the defense lawyer does not choose to go into. Here the testimony is now argued to be ambiguous, the interpretation urged by the Government was apparently also that of defense counsel, the defense counsel left it that way, and now we are entitled to take the testimony on the interpretation supporting the judgment below.

If we were called upon to remand a case every time there was ambiguous matter in the record which, if given the interpretation after further inquiry as now urged upon us, might constitute a denial of constitutional rights, we would find something in almost every case justifying a remand on the theory that substantial violation of a constitutional right might be discovered by further inquiry. This is but one of many, many cases in which we could remand in an effort to produce "the perfect trial"—which probably has never occurred. The majority have added a new red light to the kaleidoscope of warning signals previously sent down to the District Court and now prominently displayed in front of every trial judge. If the trial bench were a cockpit, and the trial judges pilots, the aircraft would already be unflyable. I therefore respectfully dissent.